IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 12, 2006

## STATE OF TENNESSEE v. FRANK  LEE TATE

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5452    Jon Kerry Blackwood, Judge**

---

**No. W2004-01041-CCA-R3-CD  - Filed February 23, 2007**

---

Following a jury trial, Defendant, Frank Lee Tate, was convicted of aggravated rape, a Class A felony, and incest, a Class C felony.  The trial court sentenced Defendant as a Range III, career offender, to concurrent sentences of sixty years for his aggravated rape conviction and fifteen years for his incest conviction.  In his *pro se* appeal, Defendant challenges the sufficiency of the convicting evidence, the trial court's evidentiary rulings, and his classification as a career offender for sentencing purposes.  The State argues on appeal that the trial court erred in not sentencing Defendant to life imprisonment without the possibility of parole after finding that Defendant was a repeat violent offender.  After a thorough review of the record, we affirm Defendant's convictions and his sentence for his incest conviction. We set aside the sentence for aggravated rape, and remand this matter for a new sentencing hearing on the sole issue of whether Defendant should be sentenced as a repeat violent offender or as a career offender for his aggravated rape conviction.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed in Part; and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Frank Lee Tate, Whiteville, Tennessee, *pro se*.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.  Background Information

The victim, Defendant's mother, testified that Defendant had recently moved in with her prior to the offenses and slept on a couch in the victim's living room.  The victim said that at

approximately 2:30 a.m. on April 8, 2003, Defendant came into her bedroom without his clothes on and told the victim that she "was supposed to be punished for hearing his conversation on the phone" and for harassing him since he had moved in. The victim said that Defendant tore her clothes off, threw her on the floor, slapped her three or four times, and dragged her from room to room by her wrist. At one point, Defendant threw the victim over a couch, hurting her leg and shoulder. The victim said that Defendant stuck his hand in her vagina and made her "pull" on his penis. The victim told Defendant to stop, but Defendant slapped her across her face. The victim denied that she had ever engaged in consensual sexual intercourse with Defendant.

On cross-examination, the victim said that after Defendant fell asleep around 5:00 a.m. she left her house and went to the apartment of her friend, Frederick Hill. The victim said that she did not call 911 at that time because she did not want to wake up Defendant and because she was upset. The victim said that she stood on the sidewalk outside of Mr. Hill's apartment and then went back to her apartment, where she stood outside until approximately 6:30 a.m. The victim said that her grandson, Albert Ryan, called the 911 dispatcher. The victim was transported to the hospital and then the Rape Crisis Center.

The victim denied that her daughter, Mary Coburn, told the victim that she would get some money if the victim reported the rape, or that the victim should allege that Defendant raped her in order to get money from him. The victim denied that she paid Mr. Ryan $100 for his role in the incident. The victim acknowledged that she picked up Defendant's paycheck on April 9, 2003, and spent part of it, but the victim said that Defendant told her to do so.

Rochelle Copeland, a registered nurse specializing in the area of sexual assault, testified that she worked at the Sexual Assault Resource Center in Memphis as a forensic nurse examiner. Ms. Copeland examined the victim at the Center on April 8, 2003. She stated that the victim was born on October 27, 1935, and was sixty-seven years old at the time of the incident. The victim described to Ms. Copeland digital and penile penetration by Defendant during the assault. The victim said that Defendant was unable to ejaculate until he made the victim masturbate him, and then he ejaculated on her hand.

Ms. Copeland said that the victim had superficial multiple scratches on her upper and lower back, a three-inch scratch on her lower left arm, and a one centimeter scratch on her left breast. Ms. Copeland said these injuries were consistent with the victim's description of being dragged through the apartment and thrown over a couch. A physical examination of the victim's vaginal area revealed bilateral vulva edema and interior genital injuries, including multiple lacerations, which were consistent with the victim's medical report.

On cross-examination, Ms. Copeland acknowledged that she did not request that Defendant undergo DNA testing. Ms. Copeland stated that the victim's vaginal injuries could not have happened on Sunday, April 6, 2003, because of the time frame within which the healing process would occur. Ms. Copeland said that she could not tell exactly when the victim incurred her injuries, but they were recent in origin. The victim told Ms. Copeland that she had not had vaginal, oral or

anal coitus within four days of the offense, and no consensual intercourse within the previous hours. Ms. Copeland said that the victim was not compensated for reporting the offense, but she was told about the crime victim's reparations fund as part of her exit interview.

Officer Robert L. Edwards, Jr., with the Rossville Police Department, arrived at the victim's house at approximately 6:22 a.m. in response to Mr. Ryan's 911 call. Officer Edwards said that Mr. Ryan was grappling with Defendant when he arrived. Officer Edwards pushed Mr. Ryan away, handcuffed Defendant, and took him outside. Defendant was read his *Miranda* rights and placed in the police car. Officer Edwards said that the victim was "highly disheveled, crying," and "really fearful." Officer Edwards called for an ambulance to transport the victim to the hospital. Officer Edwards followed the victim to the hospital and took her to the rape crisis center after she was released.

On cross-examination, Officer Edwards said that he transported Defendant to the hospital in Somerville for DNA testing. The physician on call, however, said that DNA testing would be futile because of the amount of time that had passed since the incident and because Defendant had already washed himself.

Officer Ricky Wilson, with the Fayette County Sheriff's Department, testified that Defendant's statement was taken at his office on April 14, 2003. Officer Wilson said that his office door remained open during the interview. Defendant sat in the corner chair, Officer Wilson sat behind his desk, and Officer Michael Draper with the Rossville Police Department sat by the door. Defendant was read his *Miranda* rights. Defendant said that he had a high school education and some college credits, and that he understood his rights. Defendant executed a written waiver of his *Miranda* rights. In his waiver, Defendant stated that he was willing to make a statement, and that no promises, threats, pressure or coercion had been used against him.

Officer Wilson read Defendant's statement to the jury, a portion of which is as follows:

[OFFICER WILSON]:        Do you understand why you are here?

[DEFENDANT]:        Yes. I have a sexual assault charge on my mom.

[OFFICER WILSON]:        What night did this assault happen?

[DEFENDANT]:        [April 8, 2003] around 1:30 a.m.

[OFFICER WILSON]:        Where did this [assault] occur at?

[DEFENDANT]:        5185 Highway 57, Ap[artment] #28, Rossville, TN.

[OFFICER WILSON]:        On that night, did you have sex with your mother?

| | |
|---|---|
| [DEFENDANT]: | Yes. I wouldn't call it sex, but I may have put it in her. She had it in her hand and put it in her herself. We were on the couch. I had been drinking that night and had about a fifth of whiskey. She came in there while I was watching a sex movie. I may have put my fingers in her also. |
| [OFFICER WILSON]: | Are you saying the sex was consensual? |
| [DEFENDANT]: | It was on my part. |
| [OFFICER WILSON]: | Why do you think your mother is saying you raped her? |
| [DEFENDANT]: | A dispute over money. |

Defendant said in his statement that the victim must have inflicted the injuries on herself and said that he and the victim had engaged in consensual sex since February 2003.

The State rested its case-in-chief, and Defendant presented the following defense. Albert Ryan testified that his mother, Minnie Ryan, called him about the incident. He arrived at the victim's apartment between 6:05 a.m. and 6:10 a.m. Mr. Ryan said he found the victim standing on the sidewalk, and that she was "shaken up" and "scared." The victim told Mr. Ryan that Defendant had dragged her around her apartment, slapped her, and raped her. Mr. Ryan called 911. Mr. Ryan acknowledged that the victim paid some of her household bills with some of the proceeds of Defendant's paycheck after the incident.

Frederick Hill testified that the victim knocked on his door around 7:00 a.m. on April 8, 2003, and called her daughter, Sarah Boyd. Mr. Hill said that the victim's head was down and she was crying. Mr. Hill did not recollect seeing any bruises but the victim's face appeared a little swollen. Mr. Hill said that he did not accompany the victim when she returned to her apartment, and he did not call the police. Mr. Hill acknowledged that he and the victim visited often in each other's apartments, and that he had spent the night with the victim in her apartment prior to the incident.

Defendant testified on his own behalf. Defendant said that the charges against him were the result of a conspiracy between the victim, her daughter, Mary Coburn, and Frederick Hill to force Defendant to give them money for gambling. Defendant said he worked hard, and the victim became upset if he did not give her any money so that she could go to the casinos. Defendant said that he loved and respected his mother and denied committing the offenses. Defendant said that on April 8, 2003, he arrived home around 11:00 p.m., took a shower, and drank a beer. The victim argued with him over money. At one point, Defendant said that he was in the bathroom when the victim began an argument. Defendant said that the victim told him that if he did not give her some money she "kn[e]w what to do." Defendant said the prosecutor then "became involved" in the conspiracy.

-4-

On cross-examination, Defendant denied that he was watching a "sex tape" the night of the offense, but he acknowledged that the movie he was watching had sexual connotations. Defendant denied making a statement to Officer Wilson, and said that Officer Wilson was part of the "conspiracy." Defendant conceded that Ms. Copeland "made a good point" when she testified that the victim's injuries were consistent with her medical history, but Defendant pointed out that Ms. Copeland did not testify that he was the perpetrator of the offenses. Defendant denied that he drank a fifth of whiskey on the night of the offense, but he said that he may have had some whiskey two days earlier. Defendant acknowledged that he had prior robbery convictions, but he said, "we're not comparing no rape with no robbery."

## II. Sufficiency of the Evidence

When reviewing Defendant's challenge to the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560, 573 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black,* 815 S.W.2d 166, 175 (Tenn.1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland,* 958 S.W.2d 651, 659 (Tenn.1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App 1990).

As relevant in the case *sub judice*, aggravated rape is defined as the "unlawful sexual penetration of a victim by the defendant, or the defendant by a victim," and the defendant "causes bodily injury to the victim." T.C.A. § 39-13-502(a)(2). "Sexual penetration" includes any intrusion, however slight, of a person's body "into the genital or anal openings of the victim's body." *Id*. § 39-13-501(7). The emission of semen is not required. *Id.* "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." *Id*. § 39-11-106(a)(2). The offense of incest is committed by engaging in sexual penetration with, among other familial relationships, a person's natural parent. *Id*. § 39-15-302(a)(1).

Defendant does not dispute that the victim is his natural parent. The victim testified that Defendant placed his hand in her vagina and instructed her to masturbate him. The victim stated that Defendant threw her on the floor, tore her clothes off, slapped her, and threw her over a couch, hurting her leg and shoulder. Ms. Copeland testified that the victim had various scratches and bruises on her upper and lower back, her left arm and her left breast, and genital injuries consistent

with the victim's medical history. The victim reported both penile and digital penetration to Ms. Copeland and stated that Defendant ejaculated after he made the victim masturbate him. Defendant argues that there was no physical evidence to indicate that he was the perpetrator of the offenses. The lack of physical evidence, such as DNA test results, however, goes to the weight of the State's evidence. Based on our review of the record, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was guilty of the offenses of aggravated rape and incest. Defendant is not entitled to relief on this issue.

## III.  Denial of Pre-Trial Motions

### A.  Preliminary Hearing Transcript

We note initially that Defendant proceeded *pro se* at trial as well as now on appeal. Defendant argued that his constitutional right to confront witnesses was violated because he was not allowed to personally cross-examine the State's witnesses at the preliminary hearing even though he was represented by counsel. The trial court interpreted Defendant's argument as a request for a second preliminary hearing. In denying Defendant's motion, the trial court found that Defendant

> was provided a preliminary hearing and was represented by Counsel. His complaint is that he did not like the way his counsel conducted the hearing, and that some witnesses were not truthful. Rule 5, Tennessee Rules [of] Criminal Procedure] provides for a preliminary hearing, which was provided to the Defendant.

We find no error in the trial court's denial of a second preliminary hearing. We note that a defendant "does not have a constitutional right under the State or Federal Constitution to participate in *propria persona* in his own defense and simultaneously to be represented by participating counsel. He may conduct his own defense without benefit of counsel or with an attorney present in the capacity of 'elbow counsel.' The choice is his; he represents himself or he is represented-one or the other, but not both." *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976). Defendant is not entitled to relief on this issue.

Defendant also argues that the State's failure to provide him with a written transcript of the preliminary hearing violated his constitutional rights to present a defense and effectively cross-examine the State's witnesses in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). Defendant alleges that the transcript would show that the victim recanted her charge against Defendant at the preliminary hearing and thus contains exculpatory evidence as contemplated by *Brady*. Under *Brady*, the State had a duty to furnish the defendant with any exculpatory evidence in its possession. *Id*. at 87, 83 S. Ct. at 1196-97.

Defendant requested a copy of his preliminary hearing transcript at his motion hearing to which the trial court responded, "All right." Initially, we note that a written transcript of a preliminary hearing is not required. Tenn. R. Crim. P. 5.1, Advisory Commission Comments. A general sessions court is not a court of record. *See State v. Black*, 897 S.W.2d 680, 682 (Tenn.1995)

("[I]t is undisputed that a General Sessions court is not a court of record."). The clerks of the general sessions courts are required to keep such records in criminal proceedings as required by law and the Tennessee Rules of Criminal Procedure. Tenn. R. Crim. P. 55. In a preliminary hearing,

> [t]he evidence of the witnesses does not have to be reduced to writing by the magistrate, or under the magistrate's direction, and signed by the respective witnesses; but the proceedings shall be preserved by electronic recording or its equivalent. If the defendant is subsequently indicted, such recording shall be made available to the defendant or defense counsel so they may listen to the recording in order to be apprised of the evidence introduced in the preliminary examination.

Tenn. R. Crim. P. 5.1(a)(3)

There is no indication in the record that an audio recording of the preliminary hearing was not preserved. There is also no indication in the record that Defendant requested access to the electronic recording as was his responsibility. The State is not required to disclose information a defendant already possesses or is able to obtain. *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App.1992). Nor is the State required to disclose information that is not possessed by or under the control of the prosecution or other governmental agency. *Id*. "When exculpatory evidence is equally available to the prosecution and the accused, the accused 'must bear the responsibility of [his] failure to seek its discovery.'" *Id*. (citing *United States v. McKenzie*, 768 F.2d 602, 608 (5th Cir. 1985)). It was incumbent upon Defendant to request access to the electronic recording of his preliminary hearing, which he apparently did not do. Defendant is not entitled to relief on this issue.

### B. Psychological Evaluation of State's Witnesses

Defendant filed a general pre-trial motion requesting that all of the State's witnesses submit to a "medical mental examination . . . to insure that [Defendant] receive[s] a fair and impartial trial." More specifically, Defendant requested that Mr. Hill undergo a psychiatric examination because he had previously been hospitalized for "extreme use or excess [sic] use of beer and whiskey and cocaine." Defendant contended that Mr. Hill was incompetent to testify. In another motion, Defendant requested that witnesses Mr. Hill, Ms. Coburn, Detective Edwards, the victim, and an "unknown trustee, Somerville Jail" be examined at the Western State Mental Hospital in Bolivar. Finally, Defendant suggested in another motion that the victim was incompetent to testify because of her "writing ability and not being able to read." The trial court found that Defendant had failed to establish that a psychological examination of the listed witnesses was necessary and denied Defendant's motion.

Defendant argues that the denial of his motion requiring the above named witnesses to submit to psychological examinations violated his constitutional right to present a defense and his right of confrontation. Rule 601 of the Tennessee Rules of Evidence provides that "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." "Virtually all witnesses may be permitted to testify: children, mentally incompetent persons,

convicted felons." Tenn. R. Evid. 601, Advisory Commission Comments. Rule 603 of the Tennessee Rules of Evidence provides that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." Further, the determination as to whether a witness is competent to testify is a discretionary decision of the trial court, which will not be overturned on appeal unless the court clearly abused its discretion. *State v. Hallock*, 875 S.W.2d 285, 293 (Tenn. Crim. App.1993). As for the victim, while our supreme court has held that a trial court has the inherent power to compel a psychiatric or psychological examination of a sex abuse victim, it has also stated that "[s]uch power should be invoked only for the most compelling of reasons, all of which must be documented in the record. This discretion should be exercised sparingly." *Forbes v. State*, 559 S.W.2d 318, 321 (Tenn.1977). "Compelling reasons" include situations "such as where substantial doubt is cast upon the victim's sanity, or where there is a record of prior mental disorders or sexual fantasies, or where the story is incredible, and even in these situations, only if there is little or no corroboration to support the charge." *State v. Ballard*, 714 S.W.2d 284, 287 (Tenn. Crim. App.1986); *see also State v. Campbell*, 904 S.W.2d 608, 612-13 (Tenn. Crim. App.1995).

At the motion hearing, the only information advanced by Defendant in support of his motion for a psychiatric examination of the victim and Mr. Hill is that Defendant did not know "if the witnesses was [sic] high on medication and they've been in the hospital the other two times." The record is devoid of any basis for granting Defendant's motion, or any evidence that the witnesses were incompetent to testify at the time of trial. The Confrontation Clause is a trial right, designed to prevent improper restrictions of the types of questions that defense counsel may ask during cross-examination, and not a "constitutionally compelled right of pretrial discovery." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S. Ct. 989, 999, 94 L. Ed. 2d 40 (1987). "The Clause's ultimate goal is to ensure reliability of evidence . . . by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 62, 124 S. Ct. 1354, 1370, 158 L. Ed. 2d 177 (2004). "The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Ritchie*, 480 U.S. at 53, 107 S. Ct. at 999. Defendant is not entitled to relief on this issue.

## C. DNA Testing

Defendant argues that the trial court erred in denying Defendant's request for DNA analysis on himself and the victim. A rape kit was collected from the victim at the time of her medical examination. No sample was collected from Defendant for comparison purposes, however, because of the passage of time before the collection of a sample was contemplated. The State, therefore, did not intend to introduce DNA evidence at trial. The trial court found that "[s]ince there is no DNA evidence to be introduced, and no reasons have been shown or presented for this testing, this request is denied."

Based on our review of the record, we find no error in the trial court's denial of Defendant's motion concerning DNA analysis.

-8-

## D. Motion to Dismiss the Indictment

At the motion hearing, Defendant argued that the indictment against him should be dismissed because the grand jury was selected in "a discriminatory manner." Defendant alleged that the panel "was coerced and forced by the District Attorney, like I say, the prosecutor, which is supposed to be their legal counsel, which forced the Grand Jury to vote in favor of the State, because they failed to submit evidence on my own, the evidence that the Grand Jury failed to hear."

The trial court denied Defendant's motion, finding that:

the Defendant presented no proof or statement other than the allegation that the Grand Jury was selected in a discriminatory manner. More than a conclusion is required. The Defendant also included in his motion that the indictment should be dismissed because the Grand Jury only heard one side, the officer's testimony. The Motion to Dismiss is denied.

We find no abuse of discretion in denying Defendant's motion to dismiss the indictment. *See State v. Bonderant*, 4 S.W.3d 662, 675 (Tenn. 1999)(rejecting the defendant's motion to quash the indictment in the absence of any proof that discrimination tainted the entire grand jury). Defendant is not entitled to relief on this issue.

## E. Change of Venue

Defendant filed a pre-trial motion requesting a change of venue based on a general allegation that "the State officials have obstructed justice" in a variety of ways. At the hearing on his motion, Defendant argued that "most likely most of the people, like I say, in Fayette County are related to each other." The trial court found that "Rule 18 requires venue to be in the County where the offense was committed. The Defendant made no showing of publicity or any reason to suspect that the Defendant could not receive a fair trial in Fayette County. If it appears during jury selection that a fair trial probably cannot be had, the Court will reconsider this motion."

At the conclusion of the State's voir dire of the prospective jurors, Defendant was extended an opportunity to ask the panel questions, but Defendant responded that he had no questions for the prospective jurors. None of the jurors indicated that they knew Defendant or had been unduly exposed to pre-trial publicity.

A change of venue may be granted if it appears that "a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a). A motion for change of venue is left to the sound discretion of the trial court and the court's ruling will be reversed on appeal only upon a clear showing of an abuse of that discretion. *State v. Howell,* 868 S.W.2d 238, 249 (Tenn.1993); *State v. Hoover,* 594 S.W.2d 743, 746 (Tenn. Crim. App.1979). Based on our review of the record, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for change of venue.

F. Pre-trial Motions not Brought to the Attention of the Trial Court

Defendant filed approximately 130 pre-trial motions, which, although at times repetitive, covered a wide spectrum of issues. A hearing was held on Defendant's pre-trial motions on March 22, 2004, at which time Defendant addressed nineteen of the issues raised in his pre-trial motions. Defendant acknowledged that he had filed a number of pre-trial motions, but stated, "I'm not going to waste the Court's time, like I say, with all the motions." At the conclusion of the hearing, the trial court issued its order, ruling on those issues which were brought to its attention. In his direct appeal, Defendant argues generally that the trial court erred in failing to rule on all of his pre-trial motions. He seeks appellate review of those issues not presented to the trial court at the motion hearing, and upon which no factual findings were made.

This Court's jurisdiction is appellate only; appellate courts generally do not review issues not presented to or dealt with by the trial court. T.C.A. § 16-5-108; Tenn. R. App. P. 36(a). It is a well-established rule of law that the failure to bring a motion to the attention of the trial court constitutes a waiver of the issue. *State v. Locke*, 771 S.W.2d 132, 138 (Tenn. Crim. App. 1988); *State v. Kinner*, 701 S.W.2d 224, 227 (Tenn. Crim. App. 1985). "The filing of a motion with the clerk without presenting it to the trial court for determination is of no effect." *Kinner*, 701 S.W.2d at 227. A trial judge will not be placed in error for failing to consider something which was never presented to him. *State v. Williams*, 638 S.W.2d 417, 421 (Tenn. Crim. App. 1982). Accordingly, we consider waived those issues reflected in Defendant's pre-trial motions which were not presented to the trial court by Defendant at his motion hearing. *See Locke*, 771 S.W.2d at 138 ("When the record transmitted to this Court does not reveal that a pre-trial motion was brought to the attention of the trial court prior to trial so that the trial court could rule upon the motion, the defendant waives the issue.").

## IV. Evidentiary Rulings

A. Standard of Review

The admissibility of evidence is generally within the sound discretion of the trial court. *State v. Saylor*, 117 S.W.3d 239, 247 (Tenn. 2003). The threshold determination is whether or not the proffered evidence is relevant. Pursuant to Rule 401 of the Tennessee Rules of Evidence, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). Even relevant evidence, however, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. "When arriving at a determination to admit or exclude even that evidence which is considered relevant, trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal when there is a showing of abuse of discretion." *Saylor*, 117 S.W.3d at 247.

A *pro se* defendant is not exempt from the rules of evidence and procedure. *State v. Carruthers*, 35 S.W.3d 516, 552 (Tenn. 2000); *State v. Bradfield*, 973 S.W.2d 937, 945 (Tenn. Crim. App. 1997). The *pro se* defendant "is bound by the record he has created in the trial court." *State v. Gillespi*e, 898 S.W.2d 738, 741 (Tenn. Crim. App. 1994); *see also United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973) (observing that "one of the penalties of self-representation is that [the appellant] is bound by his own acts and conduct and held to his record").

Defendant argues generally that the trial court's evidentiary rulings denied him his constitutional right to confront the witnesses against him and to conduct meaningful cross-examination. In examining the relationship between the constitutional rights extended under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment and the evidentiary rules governing relevance and the impeachment of witnesses, this Court has observed,

> [w]e begin by noting that the defendant's constitutional right to confront the witnesses against him includes the right to conduct meaningful cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L. Ed. 2d 40 (1987); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn.2000); *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn.1992). Denial of the defendant's right to effective cross-examination is " 'constitutional error of the first magnitude' " and may violate the defendant's right to a fair trial. *State v. Hill*, 598 S.W.2d 815, 819 (Tenn. Crim. App.1980) (quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L. Ed. 2d 347 (1974)). "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App.1995); *Coffee v. State*, 188 Tenn. 1, 4, 216 S.W.2d 702, 703 (1948). Furthermore, "a defendant's right to confrontation does not preclude a trial court from imposing limits upon cross-examination which take into account such factors as harassment, prejudice, issue confrontation, witness safety, or merely repetitive or marginally relevant interrogation." *State v. Reid*, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994). This court will not disturb the limits that a trial court has placed upon cross-examination unless the court has unreasonably restricted the right. *Dishman*, 915 S.W.2d at 463; *State v. Fowler*, 213 Tenn. 239, 253, 373 S.W.2d 460, 466 (1963).
>
> We also recognize that the "Sixth Amendment and the Due Process Clause of the Fourteenth Amendment clearly guarantee a criminal defendant the right to present a defense which includes the right to present witnesses favorable to the defense." *Brown*, 29 S.W.3d at 432; *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) ( "Few rights are more fundamental than that of an accused to present witnesses in his own defense.") Although this right is critical, at times it " 'must yield to other legitimate interests in the criminal trial process,'" including "'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Brown*, 29 S.W.3d at 432 (quoting *Chambers,* 410 U.S. at 295, 302, 93 S.Ct. at 1046, 1049).

*State v. Wyrick*, 62 S.W.3d 751, 770 (Tenn. Crim. App. 2001).

With that in mind, we now turn to Defendant's issues concerning the trial court's evidentiary rulings.

## B. Rule 412

Defendant challenges the trial court's ruling under Rule 412 of the Tennessee Rules of Evidence denying Defendant the opportunity to cross-examine the victim about the victim's consensual relationship with him and her sexual relationship with Mr. Hill. Although not entirely clear, it appears that Defendant argues that the evidence is admissible under Rule 412 to show that Defendant's sexual conduct with the victim was consensual, or, alternatively, that the evidence was relevant to explain the victim's medical injuries by showing that the victim had sexual relations with Mr. Hill instead of Defendant. *See* Tenn. R. Evid. 412(c)(3) and (4)(I).

Rule 412 is frequently referred to as Tennessee's rape shield law and "limits the admissibility of evidence about the prior sexual behavior of a victim of a sexual offense, and establishes procedures for determining when evidence is admissible." *State v. Sheline*, 955 S.W.2d 42, 45 (Tenn.1997). "The law was enacted to reflect the general view that evidence of prior sexual behavior is irrelevant or, if relevant, has little probative value compared to its prejudicial effect, unless the evidence is within one of the enumerated exceptions." *State v. Brown*, 29 S.W.3d 427, 429-30 (Tenn. 2000).

As pertinent to Defendant's contentions, Rule 412 provides that evidence of specific incidents of a victim's sexual behavior is inadmissible unless offered in accordance with the procedural requirements embodied in the rule, and, (1) is offered on the issue of consent if the sexual behavior is with the defendant, or (2) is offered to rebut or explain medical evidence if the sexual behavior was with a person other that the defendant. Tenn. R. Evid. 412(c)(3) and (4)(I). If the proferred evidence satisfies subsection (c), subsection (d)(4) further requires as a prerequisite to admissibility a determination by the trial court that the probative value of the evidence outweighs its unfair prejudice to the victim. Tenn. R. Evid. 412(d)(4).

In order to introduce such evidence, the defendant must file a written motion ten days prior to trial, accompanied by an offer of proof describing the specific evidence and the purpose for introducing it. *Id*. 412(d)(i) and (iii). The motion must "be served on all parties, the prosecuting attorney, and the victim." *Id*. 412(d)(ii).

Although Defendant filed the required motion within the allotted time limit, his motion contains only conclusory statements without an offer of proof to support the allegations. Defendant stated that "the purpose of this motion [is] to prove that this [is a] false charge, and allegation, and that someone else committed this alleged charge. And their personal vandetta [sic] between victim and state witness[es], and state only [has] evidence based on perjury and this evidence should be admitted part of accused['s] due process rights. And this case was conducted with improper investigation."

The trial court deferred ruling on Defendant's motion in the absence of the victim at the hearing on March 22, 2004, and directed that the "procedure set forth in Rule 412(d) will be conducted by the trial judge, upon notice by the defendant." During the victim's cross-examination, the trial court conducted a hearing out of the presence of the jury to allow Defendant the opportunity to present an offer of proof that would support the introduction of evidence concerning specific incidents of the victim's sexual conduct under Rule 412. Defendant stated that Mr. Hill "[s]ometimes . . . spends the night . . . in [the victim's] bedroom." When asked for clarification, Defendant explained, "The crime happened on April the 8th, you know what I'm saying. I'm telling the offer [sic] what I'm saying right now is sexual behavior misconduct in February of 2003." Defendant alleged that the victim watched "Playboy tapes" with him. In conclusion, Defendant stated:

> Your Honor, you know what I'm saying right now hey, the victim, you know what I'm saying right now, [the victim], right, what I'm saying right now, in the past, right what I'm saying right now, it was consensual in the past. So consensual, what I'm saying right now, she was speaking that night, that night that it happened, Your Honor, what I'm saying right now. It don't say it happened at night. You know what I'm saying. I'm thinking this witness, what I'm saying, thinking about what you see on a video tape or some Playboy tape in the past or something on this incident that she's speaking of today. I'm alleging this crime never occurred on April the 8th of 2003. It probably happened in the past or prior or misconduct had happened.

Other than general allegations that the victim watched a video tape with Defendant on the night of the offense, and that "probably" Defendant and the victim had engaged in consensual sexual relationships in the past, or the victim had engaged in sexual relationships with Mr. Hill at some point prior to the date of the offense, Defendant offers no specific incidents of sexual behavior which are relevant to the issue of consent or a sexual act with another person to rebut the medical evidence. Based on our review, we conclude that the trial court did not abuse its discretion in excluding the challenged evidence, nor did such exclusion violate Defendant's confrontation rights. Defendant is not entitled to relief on this issue.

## C. Subpoenas

Defendant argues that the trial court's grant of the State's application to quash the subpoenas issued by the Defendant requiring the attendance and testimony of Elizabeth Rice, District Attorney General for Fayette County, and Ron Swanton, with the Rossville Police Department, violated his constitutional right to present a defense. The Sixth Amendment to the United States Constitution grants an accused a right to compulsory process for obtaining witnesses in his or her favor. *Faretta v. California*, 422 U.S. 806, 816, 95 S.Ct. 2525, 2532 (1975). However, a criminal defendant's right to compulsory process is not absolute; rather, the United States Constitution only prohibits a state from denying a defendant the ability to present testimony that is "'relevant and material, and . . . vital to the defense.'" *United States v. Valenzuela Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446 (1982)(quoting *Washington*, 388 U.S. at 16, 87 S.Ct. at 1922)); *see also*, *e.g.*, *United States v.*

*Williamson*, 202 F.3d 974, 979 (7th Cir.2000); *United States v. Soape*, 169 F.3d 257, 268 (5th Cir.), *cert. denied*, 527 U.S. 1011, 119 S.Ct. 2353 (1999); *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir.1997); *United States v. North*, 910 F.2d 843, 889 (D. C .Cir.1990), *withdrawn and superceded in part on other grounds by United States v. North*, 920 F.2d 940 (D. C. Cir.1990). The Tennessee Constitution similarly affords a defendant facing criminal prosecution the right "to have compulsory process for obtaining witnesses in [the defendant's] favor." Tenn. Const. art. I, § 9. Moreover, like the United States Constitution, our state constitution only extends to a defendant a right to compulsory process "[i]f a prospective witness is or probably will be a material one. . . . The matter turns on whether the issuance of process would in fact be an abuse of process, and, if the Court finds such is the case the Court has power to prevent such abuse." *Bacon v. State*, 385 S.W.2d 107, 109 (Tenn.1964); *see also State v. Smith*, 639 S.W.2d 677, 680 (Tenn. Crim. App.1982)("'[T]he constitutional right to compulsory process requires such process for, and only for, competent, material, and resident witnesses whose expected testimony will be admissible.'"); *see also* T.C.A. § 40-17-105 ("As provided by the Constitution of Tennessee, the accused, in all criminal prosecution has a right to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in the accused's favor.")

At a hearing outside the presence of the jury, the State argued that Officer Swanton was not involved in the case other than presenting the matter to the grand jury. Defendant argued that Officer Swanton "probably" was involved in the investigation. The main thrust of Defendant's desire to secure Officer Swanton as a witness concerned a past encounter between the victim and Officer Swanton when Officer Swanton was investigating a charge against Defendant's brother, Robert Tate. Defendant alleged that Officer Swanton had visited the victim's house at some point in the past looking for Defendant's brother, Robert Tate, "with the victim probably standing there and [the victim] told" Officer Swanton that Robert Tate was not there when he was. Defendant submits that this testimony was relevant to impeach the credibility of the victim. As for District Attorney General Rice, Defendant submitted that "[Ms.] Rice was – had visit[ed] also Frederick Hill. He rode around in [her] car in Rossville, you see what I'm saying. [S]he had investigated the case as well as [s]he had talked to the witness."

The trial court found that neither witness could present either relevant or material testimony at trial and granted the State's application to quash the subpoenas.

In reviewing a trial court's exercise of its power and duty to prevent the abuse of its process, appellate courts in Tennessee have generally applied an abuse of discretion standard. *See*, *e.g*., *State v. Burrus*, 693 S.W.2d 926, 929 (Tenn. Crim. App. 1985). As pertinent to General Rice, "[i]t is left to the sound discretion of the trial court as to whether to either allow or require a member of the prosecuting team to testify. Because of the potential for misuse of the privileges by the defense, the practice is not to be permitted unless absolutely necessary." *State v. Baker*, 931 S.W.2d 232, 238 (Tenn. Crim. App. 1996) (citing *Bowman v. State*, 598 S.W.2d at 811). Based on our review, we conclude that the trial court did not abuse its discretion in granting the State's application to quash the subpoena as to General Rice.

-14-

We also conclude that the trial court did not abuse its discretion as to the requested subpoena for Officer Swanton's testimony. Assuming *arguendo* that the incident actually, as opposed to "probably" occurred, Officer Swanton was apparently not privy to the victim's deception as to her son's whereabouts, if indeed such deception occurred. Officer Swanton's proposed testimony was inadmissible on any number of grounds. *See*, *e.g*., Tenn. R. Evid. 608(b) ("Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness . . . may not be proved by extrinsic evidence."). Defendant is not entitled to relief on this issue.

### D.  Violation of "The Rule" of Witness Sequestration

Defendant filed a pre-trial motion requesting that all witnesses be excluded at trial pursuant to Rule 615 of the Tennessee Rules of Evidence, familiarly known as the "Rule." The trial court granted Defendant's motion and called for the exclusion of all witnesses from the courtroom prior to opening arguments. During the presentation of his defense, Defendant called as witnesses Minnie Ryan and Mary Coburn (Ford), both of whom were present in the courtroom during the trial. In a hearing outside the presence of the jury, Defendant made an offer of proof as to the testimony of these witnesses. Defendant said that the affidavit of complaint erroneously said that the victim called her daughter, Mary Coburn, immediately after the offense when, in fact, Ms. Coburn would testify that the victim called her other daughter, Sarah Boyd. The State did not dispute that the affidavit listed Mary Coburn's name in error and pointed out that the trial testimony was consistent that the victim called Sarah Boyd. As for Minnie Ryan, Defendant said that she had knowledge as to "what was going on inside this particular residence. . . . since it's [the victim's] daughter, you know what I'm saying right now, most likely, you know what I'm saying, her son going to tell, you know what I'm saying, what she said, you know what I'm saying right now. . . ." The trial court found that even if Ms. Coburn and Ms. Ryan were permitted to testify, the proposed testimony of both witnesses would be inadmissible on relevancy and hearsay grounds, and it excluded the testimony.

"At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before *voir dire*, but in any event shall be effective before opening statements." Tenn. R. Evid. 615. The Tennessee Supreme Court has said that "[t]he purpose of the rule is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly." *State v. Harris*, 839 S.W.2d 54, 68 (Tenn. 1992) (citing *Smith v. State*, 554 S.W.2d 648, 651 (Tenn. Crim. App. 1977)). We have previously explained the authority of the trial court in considering alleged violations of the rule:

> Rule 615 does not prescribe a specific sanction for its violation. Instead, courts retain the discretion to impose a variety of sanctions appropriate to the circumstances. *State v. Anthony*, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992); *see also* N. Cohen et al., Tennessee Law of Evidence § 6.15[11][b] (4th ed.2000). The trial court may, as a sanction, exclude the testimony of a witness who hears other testimony while subject to a sequestration order. *See State v. Weeden*, 733 S.W.2d 124, 125 (Tenn. Crim.

-15-

App. 1987). The decision to exclude or allow the testimony is a matter within the discretion of the trial court, subject to a showing of abuse and prejudice to the complaining party. *State v. Chadwick*, 750 S.W.2d 161, 166 (Tenn. Crim. App. 1987).

*State v. Black*, 75 S.W.3d 422, 424-25 (Tenn. Crim. App. 2001).

Based upon our review of the record, we conclude that Defendant has failed to show that he was prejudiced by the exclusion of the testimony of Mary Coburn and Minnie Ryan. Defendant is not entitled to relief on this issue.

After the exchange about these two witnesses' testimony, Defendant acknowledged to the trial court that all of his witnesses had been present during the course of the trial. According to Defendant's brief, but not clear from the record, Defendant believed that the trial court's ruling excluding the testimony of Ms. Coburn and Ms. Ryan also served as an exclusion of the testimony of his other witnesses, including Maggie Jones and Craig Andreas. Defendant argues that the exclusion of these witnesses under Rule 615 violated his constitutional right to present a defense.

Defendant, however, did not call these witnesses to testify or even bring the witnesses' presence to the trial court's attention. Accordingly, the trial court was not given an opportunity to consider the proposed testimony of the witnesses in order to exercise its discretionary authority under Rule 615.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . [i]n case the ruling is one of excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103. Moreover, no relief on appeal may be granted "in contravention of the trier of fact," and no relief may be "granted to a party responsible for an error or who failed to take whatever action was reasonably available to nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Defendant is not entitled to relief on this issue.

E. Witness Michael Draper

Although not entirely clear, Defendant appears to argue that the trial court erred in not requiring the State to call Officer Draper to testify because Officer Draper was included on the State's list of potential witnesses. Officer Draper and Officer Wilson participated in the interview that culminated in Defendant's written statement. The State chose to call Officer Wilson to testify instead of Officer Draper.

Tennessee Code Annotated section 40-17-106 creates the duty for the district attorney general to endorse on each indictment or presentment the names of the witnesses he intends to summon for the state. The statute, directory in nature, does not necessarily disqualify a witness whose name does

not appear on the indictment from testifying and does not mandate the state to call all witnesses actually endorsed on the indictment. *State v. Street* 768 S.W.2d 703, 710 -711 (Tenn. Crim. App., 1988) (citing *Aldridge v. State*, 4 Tenn. Crim. App. 254, 470 S.W.2d 42 (1971); *Houston v. State*, 567 S.W.2d 485 (Tenn. Crim. App. 1978)).

Defendant was entitled to request the issuance of subpoenas. The record does not show whether or not he subpoenaed Officer Draper to testify. Defendant is not entitled to relief on this issue.

### F. 911 Tape

At the start of the presentation of his defense and before calling his first witness, Defendant sought to introduce the recording of the 911 call made by Mr. Ryan. Defendant acknowledged that Mr. Ryan called 911 but insisted that he also spoke to the dispatcher. The trial court denied the admission of the tape on hearsay grounds. Defendant argues that the trial court's ruling was error because the tape contained "exculpatory evidence." Defendant does not suggest what this exculpatory evidence might be beyond his allegation that he talked to the dispatcher and told the dispatcher that he knew what "was going on at the apartment."

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay statements are inadmissible unless they fall under one of the recognized exceptions to the hearsay rule. Tenn. R. Evid. 802. Accordingly, a trial court's ruling on whether a statement is hearsay is a question of law, and the appellate court reviews the issue de novo without a presumption of correctness. *See State v. Schiefelbein*, 2007 WL 465151, *31 (Tenn. Crim. App. 2007)(citing *Shelia Rae Gibbs v. Robin Media Group,* No. M1999-00820-COA-R3-CV, slip op. at 3 (Tenn. Ct. App., Nashville, Aug. 25, 2000); *Russell v. Crutchfield,* 988 S.W.2d 168, 170 (Tenn. Ct. App.1998)).

Defendant does not suggest what exception might be applicable in the case *sub judice* which would warrant disturbing the trial court's ruling. We conclude that the trial court did not err in ruling that the 911 tape was inadmissible hearsay. Defendant is not entitled to relief on this issue.

### G. Suppression of Statement

Defendant filed numerous pre-trial motions seeking to suppress certain evidence and his statement to the police. At the hearing on Defendant's pre-trial motions, Defendant argued that the evidence seized when he was arrested should be suppressed. This evidence included "all the sheets, bedspreads, clothing, beer container, whiskey bottle, pictures, everything they seized, [and the] VCR . . . and videotapes." The following colloquy occurred:

[THE COURT]:     Excuse me just a second. Does the State have any videotapes they intend to introduce in the case in chief?

| [THE STATE]: | No, your Honor. |
|---|---|
| [DEFENDANT]: | The State hasn't provided anything in discovery. |
| [THE COURT]: | I'm just finding out. If you want something suppressed, and they're not intending to introduce anything, then there's no point in having a motion. |
| [DEFENDANT]: | Yes sir. That's fine. |
| [THE COURT]: | What else is it specifically that you want suppressed? |
| [DEFENDANT]: | Specifically, like I say, the arrest warrant, you know what I say, number one – the arrest warrant and the affidavit of complaint. |
| [THE COURT]: | All right. The arrest warrant and affidavit of complaint will not be introduced to the jury. |
| [DEFENDANT]: | They will not. |

Defendant did not raise the issue of the suppression of his statement at the motion hearing, nor did he offer any proof on this issue. The trial court found:

> The Defendant moved to suppress a number of items, including all sex tapes or video tapes. The tapes were the only things addressed at the hearing, and the State indicated that there are no tapes to be introduced or suppressed. The Defendant requested that the arrest affidavit not be introduced, and that request is granted. The State is required to call witnesses to testify.

Following opening statements, the trial court again addressed Defendant's pre-trial motions during a hearing outside of the jury's presence, and Defendant did not raise any issues concerning the suppression of his statement. At trial, Defendant's statement was introduced into evidence during the testimony of Officer Wilson . Defendant made the following objection:

> I'm going to object to the statement because that's not my initials there. Somebody wrote those initials there. But you can enter it into evidence. That's fine. I'm objection [sic], you know what I'm saying, to the statement. Those initials are not my initials.

Upon further direct examination, Officer Wilson testified that he personally observed Defendant initial his statement. On cross-examination, Defendant did not challenge Officer Wilson's testimony concerning the circumstances under which Defendant's statement was made, or

-18-

his testimony that Defendant was read his *Miranda* rights, executed a written waiver of those rights, and voluntarily gave a statement to the police. Defendant did not raise the issue during his direct testimony.

"The manner of objecting to the admissibility of a confession in this State is a travel-worn path. The proper procedure is to conduct a hearing outside the presence of the jury, at the conclusion of which the trial judge determines the question of admissibility of the confession." *State v. Robinson*, 622 S.W.2d 62, 67 (Tenn. Crim. App., 1980) (citing *State v. Pursley*, 550 S.W.2d 949, (Tenn.1977)). At such a hearing, it is incumbent upon the parties to offer all of their proof on the issues. *Id.* (citing *Shafer v. State*, 381 S.W.2d 254, 214 Tenn. 416 (1964)). Although Defendant claimed in his pre-trial motions that he was not read his *Miranda* rights prior to making his statement and that his statement was involuntary, Defendant did not bring these issues to the trial court's attention at the hearing on his motion to suppress, nor did he offer any evidence at the hearing concerning the circumstances surrounding the taking of his statement. Thus, the trial court did not even make any factual findings as to this issue, much less rule on the issue. This Court's jurisdiction is appellate only; appellate courts generally do not review issues not presented to or dealt with by the trial court. T.C.A. § 16-5-108; Tenn. R. App. P. 36(a). As a result, review of this issue is waived.

## H. Victim's prior injuries

Defendant argues that his right to cross-examine the victim was impermissibly impaired when he was prevented from questioning the victim about certain injuries which Defendant alleged she had sustained at a casino at some unspecified point in time. During the victim's cross-examination, the following colloquy occurred:

> [DEFENDANT]: How did you get your shoulder injury?
>
> . . .
>
> [THE VICTIM]: Because you throw [sic] me on the floor. That's how.
>
> [DEFENDANT]: But you never had a shoulder injury before I throwed [sic] you on the floor?
>
> [THE VICTIM]: No.
>
> [DEFENDANT]: So you never went to the doctor for no shoulder injury or nothing?
>
> [THE VICTIM]: No, I go to the doctor and didn't go for no shoulder. I go for muscle pains.

[DEFENDANT]:     What kind of medication are you taking?

[THE STATE]:     I'm going to object to the relevance.

[THE COURT]:     That'll be sustained.  You have to be more specific.

[DEFENDANT]:     The victim, you know what I'm saying, have you ever fallen, right you know what I'm saying, on the floor of your apartment, the victim?

[THE STATE]:     I'm going to object to relevance.

[THE COURT]:     That'll be sustained.  You have to be more specific, sir.

. . .

[DEFENDANT]:     Do you have any medical records saying that you already had an injury before that day occurred?

[THE VICTIM]:     No.  No.

Defendant argues that the trial court erred in sustaining the State's objections to this line of questioning.  Defendant does not say when this injury was supposed to have occurred.  The victim testified that she had not hurt her shoulder prior to the offense, and that she had never seen a doctor about an injury to her shoulder.

The propriety, scope, manner, and control of testimony and other evidence are matters entrusted to the sound discretion of the trial court. *See State v. Hutchison*, 898 S.W.2d 161, 4172 (Tenn. 1994); *State v. Barnard*, 899 S.W.2d 617, 624 (Tenn. Crim. App.1994) (citing *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978)); *see also* Tenn. R. Evid. 611.  "Absent a clear abuse, which has resulted in manifest prejudice to the accused, this court will not interfere with the trial court's exercise of its discretion in matters pertaining to the examination of witnesses." *State v. Humphreys*, 70 S.W.3d 752, 766 (Tenn. Crim. App.2001) (citing *Coffee v. State*, 216 S.W.2d 702, 703 (Tenn.1948)).  In the exercise of his right to present a defense, an accused generally "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973).  Defendant did not make an offer of proof as to the testimony he deemed relevant.  Without an offer of proof as to the victim's testimony, we are unable to determine whether the trial court's ruling was error. *State v. Baxter*, 938 S.W.2d 697, 703 (Tenn. Crim .App.1996); *see also State v. Martin*, 642 S.W.2d 720, 724 (Tenn.1982) (offer of proof needed for appellate court to assess the impact of a ruling).

Based on our review, we find no abuse of discretion in the trial court's evidentiary ruling on this issue. Defendant is not entitled to relief on this issue.

## I. Expert Witness

Defendant filed several pre-trial motions for the appointment of an expert to assist him in his defense. Defendant did not raise the issue at the motions hearing. Before the opening of the State's case-in-chief, Defendant requested that the trial court provide him with the services of an expert, which the trial court denied because it was raised past the last day for filing motions, a date well within the discretion of the court to set. Defendant now challenges the trial court's denial of his motion for an expert witness, arguing that the ruling denied him the opportunity to present a defense or effectively cross-examine witnesses.

According to Defendant's "Motion for appointment [of an] Expert Witness," Defendant states that the victim and Mr. Hill have been hospitalized in the past for substance abuse, both have fallen or "passed out," and are on medication. Defendant stated, "A mental expert is require[d] to test their mental state and mine." In a second motion, Defendant stated that he needed an expert witness "to testify concerning evidence offer[ed] by the State and cross-examine their witness[es] concerning truthful documents, [whether] any injury occurred or [whether] somebody else could have committed the crime. The Defendant need[s] an expert in the medical field to dispute [the State's witness]." In another motion, Defendant requested an expert witness to "conduct [a] gynecologist examination" on the victim in order to rebut the State's medical evidence, and to give testimony concerning the victim's prior injuries.

The court may set a time for the making of pretrial motions or requests and, if required, a later date of hearing. Tenn. R. Crim. P. 12(c). Clearly, the granting of a motion for a request of this nature made on the day of trial would probably have required a continuance and delay of the trial. The decision whether to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Morgan*, 825 S.W.2d 113, 117 (Tenn. Crim. App.1991). The trial court has substantial discretion "to control the docket and the flow of justice therefrom" in order for the court system to function properly. *State v. Barbara Norwood*, No. 03-C-01-9111-CR-00366 (Tenn. Crim. App. at Knoxville, Dec. 10, 1992).

We conclude that the trial court did not abuse its discretion in denying Defendant's request for the appointment of an expert. Defendant had the opportunity to argue the necessity for his request at the motions hearing prior to trial, and he chose not to do so. Moreover, even had Defendant's request for the assistance of an expert been made timely, Defendant has failed to establish a particularized need for such services as required by Rule 13(c)(2) of the Rules of the Tennessee Supreme Court. To support his request, Defendant was required to show that a substantial need existed which required the assistance of state paid supporting services, and that his defense could not be fully developed without such expert before the trial court was required to grant his request for expert services. *State v. Barnett*, 909 S.W.2d 423, 430 (Tenn. 1995). Generally, unsupported assertions that the services are needed to counter the State's proof are insufficient to

establish the "particularized need" for such services. *Id.*; *State v. Cazes,* 875 S.W.2d 253, 261 (Tenn. 1994). Defendant is not entitled to relief on this issue.

## J. Trial Court's Failure to Declare a Mistrial

Defendant argues that the trial court erred in not declaring a mistrial when the trial court excluded his defense witnesses from testifying because of violation of Rule 615 of the Tennessee Rules of Evidence. Whether to grant a mistrial lies within the sound discretion of the trial court, and we will not disturb the court's decision in this regard absent a clear showing of abuse of discretion. *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000) (citations omitted). A mistrial should be declared in a criminal case only when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial is not declared. *See id.* (citing *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App.1994)); *State v. Jones*, 15 S.W.3d 880, 893 (Tenn. Crim. App.1999) (citing *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App.1977)). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App.1991) (quoting *Arnold*, 563 S.W.2d at 794). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. *Land*, 34 S.W.3d at 527 (citing *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App.1996)).

The trial court did not exclude Ms. Coburn and Ms. Ryan from testifying solely because they remained in the courtroom during the trial. The trial court also ruled that their proposed testimony was not relevant and was inadmissible hearsay. Defendant also sought a mistrial because the State did not call Michael Draper as a witness, as was the prosecution's prerogative to do. Defendant was granted subpoena power, and, as noted earlier in this opinion in connection with another issue, the record is not clear as to whether he subpoenaed Officer Draper to testify for the defense as was Defendant's responsibility. *See* T.C.A.§ 40-17-107(b) (requiring the clerk of the court in which a criminal cause is pending to issue subpoenas, at any time, to any part of the state, for witnesses as either the district attorney general or the defendant may require). Defendant also argued that the failure to appoint an expert witness to assist him at trial warranted a mistrial. As noted above, Defendant failed to properly present his request for an expert witness or show a particularized need for such a witness. Based on the foregoing, we conclude that the trial court did not err in denying Defendant's motion for a mistrial. Defendant is not entitled to relief on this issue.

## K. Prosecutorial Misconduct

Defendant asserts that the prosecutor improperly commented on the credibility of the State's witnesses during closing arguments. This court has observed that there are five generally recognized areas of prosecutorial misconduct related to closing argument: (1) it is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw; (2) it is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (3) the prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury; (4) the

prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict; and (5) it is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge. *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citations omitted).

Based on our review, we conclude that the State properly restricted its closing argument to matters in evidence or issues at trial. Moreover, Defendant made no objection to the prosecutor's remarks. "It is well settled that without a contemporaneous objection to a prosecutor's statements, the error is waived." *State v. Farmer,* 927 S.W.2d 582, 591 (Tenn. Crim. App.1996) (citing *State v. Sutton,* 562 S.W.2d 820, 825 (Tenn.1978)). Defendant is not entitled to relief on this issue.

## L. Bias on the Part of the Trial Court

Defendant argues that the trial court's evidentiary rulings, when considered in their entirety, evidence an impermissible bias against him. Under Tennessee law, "[i]t is well-established that a trial judge has broad discretion in controlling the course and conduct of the trial, and that in exercising that discretion, he or she must be careful not to express any thought that might lead the jury to infer that the judge is in favor of or against the defendant in a criminal trial." *State v. Cazes*, 875 S.W.2d 253, 260 (Tenn. 1994) (citing *State v. Caughron*, 855 S.W.2d 526, 536 (Tenn.1993)). After a thorough examination of the record in the case *sub judice,* we are unable to agree that the trial judge demonstrated bias against the Defendant. We conclude that the trial judge acted appropriately within his discretion. Defendant is not entitled to relief on this issue

## M. Miscellaneous Issues

Defendant, in his multiple briefs, raises a multitude of alleged errors on the part of the trial court and the State. However, many of these issues were not properly preserved for appeal. We are constrained to reiterate that it is not sufficient for an appellant, whether represented by counsel or proceeding *pro se*, to rely on bare allegations of error without supporting such argument with a complete record, or without taking the steps necessary to preserve the issue for purposes of appeal. *See*, *e.g*., T.C.A. § 40-18-110(c) (stating that a defendant's failure to submit a written request to the trial court for an instruction on a specific lesser included offense waives the issue for purposes of appeal); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. R. Crim. P. 12(f) ("Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with: (1) rules requiring such matters to be raised pretrial; (2) any deadline set by the court under Rule 12(c); or (3) any deadline extension granted by the court.").

Nevertheless, we have reviewed all of the issues raised by Defendant in his briefs which are not specifically addressed in this opinion, and conclude that Defendant is not entitled to relief on

these issues.  We also conclude that none of Defendant's issues rise to the level of "plain error" as contemplated in Rule 52(b) of the Tennessee Rules of Criminal Procedure.

## V.  Sentencing Issues

Defendant does not challenge the length or manner of service of his sentence for his incest conviction.  Defendant argues on appeal that the trial court erred in determining the length of his sentence for his aggravated rape conviction because the trial court did not place its findings on the record as to the applicable enhancement factors, and failed to consider any mitigating factors.  The State argues on appeal that the trial court erred in not sentencing Defendant to life imprisonment without the possibility of parole for his aggravated rape conviction after the trial court found, in addition to his classification as a career offender, that Defendant was a repeat violent offender pursuant to Tennessee Code Annotated section 40-35-120.

When a defendant challenges the length or the manner of service of his or her sentence, this Court must conduct a *de novo* review with a presumption that the determinations made by the trial court are correct.  T.C.A. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).  This presumption, however, is contingent upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.  *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).  If the record fails to show such consideration, the review of the sentence is purely *de novo*.  *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determinations the trial court must consider: (1) the evidence presented at the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any appropriate enhancement and mitigating factors; (6) the defendant's potential or lack of potential for rehabilitation or treatment; and (7) any statements made by Defendant in his own behalf.  T.C.A. §§ 40-35-103 and -210; *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).  The defendant bears the burden of showing that his sentence is improper.  T.C.A. § 40-35-401(d) Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Notwithstanding these well settled principles, when a defendant is possibly subject to sentencing as a "career offender," we must note that Tennessee Code Annotated section 40-35-108 mandates a "maximum sentence within the applicable Range III" whenever the court finds beyond a reasonable doubt that the defendant is a career offender.

The State filed a notice of intent to seek enhanced punishment and a notice of repeat offender status on November 26, 2003.  At the sentencing hearing, however, the State sought sentencing based on Defendant's status as a career offender.  In support of Defendant's enhanced range classification, the State introduced certified copies of Defendant's convictions of aggravated robbery in Texas in 1983 and 1985.  The State relied on Defendant's presentence report to support his Tennessee convictions of robbery in 1997, aggravated robbery in 1995, and one count of rape, one count of robbery, and three counts of robbery by use of a deadly weapon in 1987.  Defendant did not

challenge or offer any evidence to rebut these prior convictions at the sentencing hearing. He argued, however, that the five 1987 Tennessee convictions, and the two Texas convictions, should be merged for offender status classification purposes. *See* T.C.A. § 40-35-108(b)(4).

Defendant stated:

Yes, Your Honor. The State has – they have filed the notice of enhancement, like I say. The State – defendant was convicted on several of those charges he's listed, but the charges he got convicted on in the state of Texas, Your Honor, like I say, they was considered being one prior in the state of Texas, Your Honor. The ones he got convicted [of], like I say, in 1982 – excuse me – like I say – in 1987, in the state of Tennessee, like I say, is under the Jury Sentencing Act, and they passed an act, like I say, (indiscernible) 1989. The two robberies coming out of Memphis, like I say, came out of the same episode, less that 25 apart, concerning, like I say, I had the rape as well as the two robbery charges, like I say. Defendant is not a career offender, like I say. The sentence I agree, but not a career offender.

At the conclusion of the sentencing hearing, the trial court found that Defendant was a Range III, career offender, for sentencing purposes, and a repeat violent offender as defined in Tennessee Code Annotated section 40-35-120. The trial court, however, apparently at the urging of the State, sentenced Defendant as a Range III, career offender, to sixty years for his aggravated rape conviction. The trial court did not make any findings of fact with regard to Defendant's status as a repeat violent offender.

"A 'career offender' is a defendant who has received . . . any combination of six (6) or more Class A, B, or C prior felony convictions, and the defendant's conviction offense is a Class A or B felony." T.C.A § 40-35-108(a)(1). A "prior conviction" includes "a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced." *Id.* § 40-35-108(b)(1).

Defendant was convicted of aggravated rape, a Class A felony, *id.* § 39-13-502(b), and thus qualifies for consideration as a career offender. According to the pre-sentence report, Defendant entered pleas of guilty in 1987 in Tennessee to one count of robbery, one count of rape, and three counts of robbery accomplished by the use of a deadly weapon. Defendant was sentenced to ten years imprisonment for each 1987 conviction. Defendant was convicted in Tennessee of aggravated robbery, a Class B felony, in 1995, and robbery, a Class C felony, in 1997.

The applicable statute at the time of Defendant's offenses provided that "[c]onvictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions; however acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed as a single course of conduct[.]" *Id.* § 40-35-108(b)(4)(2003). The presentence report indicates that Defendant's 1987 convictions arose out of offenses all occurring on February 26, 1987. At the time

of the commission of the offenses, former Tennessee Code Annotated section 39-2-501 provided that "[r]obbery is the felonious and forcible taking from the person of another, goods or money of any value by violence or putting the person in fear." T.C.A. § 39-2-501(a)(1987) (repealed 1989). The statute further provided that if a deadly weapon was used during the commission of an offense, the offense was considered a Class X felony. *Id.*

Various panels of this Court have concluded that a robbery offense committed with the use of a gun clearly does not fall within the scope of the "one conviction" proviso of section 40-35-108(b)(4) because by its nature, the offense threatens bodily injury. *See State v. Rodriques D. Pruitt*, M2005-01862, CCA-R3-CD, 2006 WL 2682822, at *11 (Tenn. Crim. App., at Nashville, Sept. 8, 2006); *State v. Jerry L. Sandridge*, W2004-0199-CCA-R3-CD, 2005 WL 1215967, at *2 (Tenn. Crim. App., at Jackson, May 20, 2005); *State v. Anthony Murff aka Anthony Muff*, W2001-01459-CCA-R3-CD, at *11 (Tenn. Crim. App., at Jackson, June 11, 2002); *see also Nix*, 922 S.W.2d at 903. Thus, the trial court did not err in considering Defendant's three 1987 Tennessee convictions for robbery accomplished with the use of a deadly weapon as separate offenses under Tennessee Code Annotated section 40-35-108(b)(4).

The State did not introduce any evidence concerning the circumstances surrounding the commission of Defendant's 1987 robbery and rape convictions or whether the acts resulted in or threatened bodily injury. Nonetheless, even if these offenses were construed to be a single course of conduct so that they constituted only one conviction for the purpose of determining prior convictions, this merged conviction, in addition to Defendant's 1995 aggravated robbery conviction, his 1997 robbery conviction, and the three 1987 convictions of robbery by use of a deadly weapon are sufficient to support Defendant's classification as a career offender for his aggravated rape conviction. As noted above, the trial court does not have any discretion in sentencing a career offender. A career offender convicted of a Class A felony is subject to a mandatory sentence of sixty years. In other words, this sentence cannot be enhanced due to the presence of enhancement factors or reduced due to the existence of mitigating factors.

The State argues on appeal that Defendant should be sentenced to life without the possibility of parole because the trial court found that Defendant is a repeat violent offender. *See* T.C.A. § 40-35-120(g) ("The court shall sentence a defendant who has been convicted of any offense listed in subdivision (b)(1), (c)(1), or (d)(1) to imprisonment for life without possibility of parole if the court finds beyond a reasonable doubt that the defendant is a repeat violent offender as defined in subsection (a)."). A trial court's finding that a defendant is or is not a repeat violent offender is appealable by either party. T.C.A. § 40-35-120(h).

Under the Repeat Violent Offender Act, defendants convicted of certain violent crimes who have a record of specified prior convictions qualify for an automatic sentence of life without parole. *See* T.C.A. § 40-35-120. The statute provides that:

(a)     A "repeat violent offender" is a defendant who:

(1)     is convicted in this State on or after July 1, 1994, of any offense classified in subdivision (b)(1) as a violent offense; and

(2)     Has at least two (2) prior convictions for offenses classified in subdivision (b)(1) or (b)(2) as a violent offense; . . .

T.C.A. § 40-35-120(a).

Defendant was convicted of aggravated rape which is defined as a violent offense in subdivision (b)(1) of Tennessee Code Annotated section 40-35-120 and qualifies Defendant for consideration as a repeat violent offender. The trial court, however, made no specific findings on the record that Defendant has the requisite prior convictions to support a repeat violent offender classification. To support such a classification, Defendant must have two prior qualifying convictions of violent offenses for which he served two separate periods of confinement. T.C.A. § 40-35-120(a)(2) and (e)(1)(A). If the State intends to rely on one of Defendant's Texas convictions to support his classification as a repeat violent offender, the State must show that Defendant served a separate period of incarceration for the Texas offense, and that the Texas conviction, if committed in this state, constituted a predicate offense in subsection (b), (c) or (d), or, if not a named predicate offense, that the elements of the Texas felony are the same as a designated predicate offense. *Id.* 40-35-120(e)(4).

## CONCLUSION

After a thorough review of the record, we affirm Defendant's convictions, and his sentence for the incest conviction. We remand this matter, however, for a new sentencing hearing on the sole issue of whether Defendant should be sentenced as a repeat violent offender or a career offender for his aggravated rape conviction.

_____
THOMAS T. WOODALL, JUDGE