**STATE of Tennessee, Appellee,**

v.

**Floyd KINNER, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

July 3, 1985.

Permission to Appeal Denied by Supreme Court Sept. 30, 1985.

James W. Freeland, Jr., Somerville, for appellant.

W.J. Michael Cody, Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, Paul G. Summers, Dist. Atty. Gen., J. Kerry Blackwood, Asst. Dist. Atty. Gen., Somerville, for appellee.

OPINION

TATUM, Judge.

The defendant, Floyd Kinner, was convicted of armed robbery and two counts of aggravated assault. He was sentenced under Range II to life imprisonment for the armed robbery conviction and to ten years imprisonment for each of the aggravated assault convictions. The sentences were ordered to run concurrently. On this appeal, the defendant attacks the sufficiency of the evidence and says that the convictions should be reversed because he was denied a preliminary hearing. We find no merit in the issues presented and affirm the judgment below.

Before discussing the issues, we will first summarize the evidence.

Sam Pleasants testified that he owned and operated Pleasants' Grocery in Fayette County. On Saturday, January 21, 1984, he and his father, Miles Pleasants, and an employee, Ricky Thomas, were at the store at approximately 6:00 p.m. While Sam Pleasants was waiting on two lady customers, a black man entered the store and asked for some cheese. The man then pulled a gun on Miles Pleasants and Ricky Thomas and forced them to lie on the floor. The man then pointed the gun at Sam Pleasants and robbed him of $500, in addition to some food stamps and two checks which were under the cash register in a cigar box. After obtaining the money, the robber ordered Sam Pleasants to lie on the floor and then fled the store.

Sam Pleasants could not see the robber's face plainly and was unable to identify the robber. However, he stated that a brown jacket that was obtained from the defendant at the time of his arrest, looked like the jacket worn by the robber. Also a pistol obtained from the defendant appeared identical to the gun used by the robber.

Miles Pleasants, father of Sam Pleasants, corroborated the testimony of Sam Pleasants. Miles Pleasants was also unable to identify the robber.

Seventeen-year-old Ricky Thomas was a part-time employee at the Pleasants' store. At about 6:00 p.m., closing time, Ricky Thomas was outside the store when he observed two ladies enter the store. He then saw a black man walk across the street to the store and enter it. Thomas reentered the store and was sitting on the drink box when the man told Sam Pleasants to get him some cheese. The black man then went to the door and looked out and then told Miles Pleasants and him (Ricky Thomas) to "get down." The black man had a pistol which he was waving back and forth toward all three of the store occupants. The robber then went to Sam Pleasants and robbed him of the store's money. Sam Pleasants then got on the floor and the robber left the store.

Ricky Thomas described the robber as being approximately 5 feet 10 inches tall and weighing 140 pounds. The robber was a light-skinned black man with a mustache and beard. He was wearing the same brown jacket that was in the defendant's possession when arrested. Although Mr. Thomas did not get a good look at the pistol, he testified that it looked like the same pistol that was in the defendant's possession at the time of his arrest. A few days after the robbery, a policeman showed Ricky Thomas some photographs. Thomas identified a picture of the defendant as looking like the robber. At trial, Ricky Thomas positively identified the defendant as the man who had robbed the store.

Collierville Police Officer David Boling testified that he knew the defendant by sight. On February 4, 1984, Officer Boling stopped the defendant for a traffic violation in Collierville. The defendant stated at the time he was stopped that the passenger in his automobile was a hitchhiker. Officer Boling found and recovered a Forehand Arms .32 caliber, 2-inch nickel-plated revolver from underneath the front seat on the driver's side of the defendant's automobile. A brown jacket, which was identified by the victims at trial, was found in the backseat of the defendant's automobile.

Fayette County Investigator Jeff Holt testified that the defendant told him that the jacket belonged to him (the defendant). Investigator Holt also testified that he interviewed Ricky Thomas sometime after the robbery and separately laid out several photographs for Mr. Thomas to observe. Mr. Thomas picked a photograph of the defendant as being a picture of the man who had robbed the store.

The defendant did not testify but introduced three witnesses in an effort to establish an alibi defense. Ms. Bertha Stanback testified that she owned the Cocoa Lounge in the Orange Mound area of Memphis. She testified that on Saturday, January 21, 1984, the defendant attended her birthday party at the Cocoa Lounge, arriving at approximately 2:00 p.m. and staying virtually all afternoon and evening. The defendant left only a couple of times for 30 to

40 minute periods to go to a whiskey store and to change clothes.

Ms. Betty Kinner, the defendant's sister, testified that she lived with her mother in Memphis. On January 21, 1984, the defendant came home at approximately 6:00 p.m., while her mother was watching the evening news. He told her that he had been to a birthday party at the Cocoa Lounge and came home to change clothes. Ms. Betty Kinner testified that it was approximately one hour's drive from Memphis to Pleasants' Grocery.

Ms. Retha Kinner, the defendant's mother, testified that on January 21, 1984, the defendant came home to change clothes at approximately 6:00 p.m. She testified that she had never seen the brown jacket that was in the defendant's possession and owned by him at the time of his arrest. Furthermore, she testified that she had never seen the defendant with a pistol.

The State introduced a rebuttal witness, Mr. Morris Cleggins, who testified that he had known the defendant for about 15 years. Defendant had lived near Pleasants' Grocery for 7 or 8 years. Mr. Cleggins testified that he owns and operates a business establishment about 2 miles from Pleasants' Grocery. He recalled that on the date Pleasants' Grocery was robbed, the defendant and the defendant's brother came to Mr. Cleggins' place of business around 4:30 or 5:00 p.m. On cross-examination, Mr. Cleggins testified that he did not dislike the defendant but admitted that he had suspected the defendant and a group of others of breaking into his business when the defendant was a juvenile. He also testified that he was paid $500 for providing the information that he had seen the defendant at his establishment in the late afternoon on the day of the robbery.

Fayette County Sheriff Bill Kelley testified that two or three days after the robbery, he went to see Mr. Cleggins, who gave him information to assist in the investigation. Subsequently, Mr. Cleggins was paid a $500 reward through Crime Stoppers. Mr. Cleggins was surprised to receive the reward.

The defendant argues that in the light of his evidence establishing an alibi defense, no rational trier of fact could have been convinced of his guilt beyond a reasonable doubt. The defendant cites *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and T.R.A.P. 13(e). We disagree with the defendant. The conflict in the evidence on the alibi issue was resolved by the jury. *State v. Crawford*, 635 S.W.2d 704 (Tenn.Crim.App. 1982). It was within the province of the jury to reject the defendant's evidence in favor of the evidence by the State. The evidence meets the standard of *Jackson v. Virginia, supra* and Rule 13(e), T.R.A.P.

The defendant also argues that even if he was the person present at Pleasants' Grocery, he is not guilty of the aggravated assault upon Ricky Thomas, as there was no physical injury nor direct pointing of the pistol. The defendant was convicted of violating T.C.A. § 39–2–101(b)(3). This subsection requires only that the defendant "assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession." Mr. Ricky Thomas testified that the defendant was carrying the pistol when he ordered him and Miles Pleasants to lie on the floor. Mr. Thomas explained that he was "scared to death" when the defendant was waving the pistol back and forth among the three people in the store.

The "waving" of the pistol from one victim to another is an assault on all the victims. The term "assault" was defined in *Bass v. State*, 65 Tenn. 579 (1872) at 588:

"In view of many cases which have been adjudged, it is not inappropriately defined 'to be an attempt, with force *or the unequivocal appearance of an attempt, with force or violence, to do a corporal injury; and may consist of any act which shall convey, to the mind of the person set upon, a well grounded apprehension of personal violence:*' 2 Waterman's A.C.P., 41." (Emphasis supplied)

Also see *State v. Smith,* 21 Tenn. 457 (1841); *Casey v. State,* 491 S.W.2d 90 (Tenn.Crim.App.1972) and the cases therein discussed; Wharton's Criminal Law, 14th Ed., Vol. II. We think that the evidence supports the aggravated assault conviction upon Ricky Thomas.

■ The defendant next contends that the trial court erred by denying him his right to a preliminary hearing and by failing to dismiss the indictments. T.R.Cr.P. 5(e), provides:

> "5(e) Indictment Before Preliminary Examination.—Any defendant arrested prior to indictment or presentment for any offense, whether misdemeanor or felony, except small offenses, shall be entitled to a preliminary hearing upon his request therefor, whether the grand jury of the county be in session or not. If the defendant is indicted during the period of time in which his preliminary hearing is being continued, or at any time before accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of the prosecutor, he may dismiss the indictment upon motion to the court. Provided, however, that no such Motion to Dismiss shall be granted after the expiration of thirty days from the date of the defendant's arrest."

In this case it appears that the defendant was stopped for a traffic violation and arrested by Collierville Police Officer Boling on February 4, 1984. It is unclear for what offense the defendant was arrested and no arrest warrant for any offense appears in the record. Apparently, the defendant was on parole at the time of his arrest from a September, 1977 Shelby County conviction for robbery and rape. Officer Boling discovered that the defendant was in possession of a pistol at the time of the stop which resulted in his arrest.

While being held at the Shelby County Jail, on March 26, 1984, defendant was indicted by the Fayette County Grand Jury for armed robbery and two counts of aggravated assault. There is nothing to indicate that warrants had been issued by any Fayette County Court against the defendant prior to the grand jury indictment. The record contains no evidence that the defendant requested a preliminary hearing within 30 days of his arrest.

After the filing of many pretrial pleadings and a request for a continuance by the defendant, a Motion to Dismiss the Indictments for failure to grant a preliminary hearing was filed. The motion to dismiss was not filed until sometime during the day of the trial, August 22, 1984. The record does not reveal that the Motion to Dismiss the Indictments was ever presented to the trial judge for consideration. The record contains no ruling or order on the defendant's motion to dismiss.

There are several reasons why this Motion to Dismiss the Indictments could not be sustained. We will discuss only two of them.

■ First, Tennessee Rules of Criminal Procedure, Rule 12(b)(1) requires that all defenses and objections based on defects in the institution of the prosecution be raised prior to trial. Failure to comply with T.R.Cr.P. Rule 5(e) is a defect in the institution of the prosecution. The motion to dismiss was not filed until the date of the trial. The requirement that these questions be raised "prior to trial" means sometime earlier than the day of the trial. *State v. Hamilton,* 628 S.W.2d 742 (Tenn. Crim.App.1981). The motion to dismiss that was filed sometime during the day of the trial came too late.

■ Moreover, there is nothing in the record to indicate that the motion was ever brought to the attention of the trial court. It must affirmatively be shown that a question sought to be reviewed by an appellate court was presented to, and passed on, by the trial court. The filing of a motion with the clerk without presenting it to the trial court for determination is of no effect. A trial judge will not be placed in error for failing to consider something which was never presented to him. *State v. Williams,* 638 S.W.2d 417 (Tenn.Crim.App. 1982). In this same connection, the record fails to support the allegation of counsel

that the defendant was entitled to a preliminary hearing or that one was requested. The record does not reveal that the defendant was arrested for these offenses prior to indictment.

The judgment of the trial court is affirmed.

SCOTT, J., and JOE G. RILEY, Jr., Special Judge, concur.