IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1998 SESSION

FILED

July 9, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9704-CR-00118 |
| | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable J. Randall Wyatt, Jr., Judge |
| | ) | |
| MELVIN LEWIS PEACOCK, | ) | (Possession of three hundred grams or |
| | ) | more of cocaine for resale and unlawful |
| Appellant. | ) | possession of a weapon) |

For the Appellant:

Mark J. Fishburn
100 Thompson Lane
Nashville, TN 37211

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Lisa A. Naylor
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

Victor S. Johnson, III
District Attorney General
        and
Katrin Novak Miller
Assistant District Attorney General
Washington Square
222 2nd Avenue, North
Nashville, TN 37201-1649

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Melvin Lewis Peacock, appeals as of right from his jury convictions in Davidson County for possession with intent to sell three hundred grams or more of a substance containing cocaine, a Class A felony, and for the unlawful possession of a weapon, a Class E felony. The trial court sentenced the defendant as a Range I, standard offender to twenty years in the custody of the Department of Correction for the cocaine possession conviction and to a concurrent two-year sentence in the custody of the Department of Correction for the weapon possession conviction. The trial court ordered the defendant to serve the twenty-year sentence consecutively to an earlier sentence. The defendant presents the following issues for our review:

> (1) the trial court erred when it denied the defendant's motion to suppress the evidence seized by the police pursuant to a search warrant on the basis that an exact copy of the warrant was not left with the defendant;
>
> (2) the trial court erred in denying the defendant's motion in limine to preclude the state from introducing into evidence five car titles found in a safe; and
>
> (3) the trial court erred in permitting the state to recall Curtis Peacock as a witness during its case-in-chief.

We affirm the trial court's judgment of conviction.

This case involves a search of the defendant's apartment pursuant to a search warrant on December 9, 1994. Upon entering the apartment, Officer Donegan found three people: (1) the defendant, (2) Curtis Peacock, the defendant's cousin and roommate, and (3) George Logan, the defendant's friend and a recent resident of the apartment. During the search, officers discovered about seven hundred grams of cocaine located in a safe. The officers also found a weapon and undisclosed amounts of marijuana. Later, on January 25, 1996, five car titles in the defendant's name were discovered in the safe while Officer Donegan was gathering information regarding the

2

safe's manufacturer and serial numbers pursuant to a request by the defendant's attorney.

## I. MOTION TO SUPPRESS

The defendant contends that the trial court erred by refusing to suppress the evidence seized from his apartment. The defendant submits that the failure of the police to leave a copy of the search warrant with him makes the search illegal and the evidence inadmissible under Rule 41(c), Tenn. R. Crim. P. The state counters that the officer did in fact give to the defendant a copy of the warrant as required by Rule 41(c). We agree.

At the suppression hearing, the defendant testified that neither he nor anyone else living at the defendant's residence was given a copy of the search warrant executed by Officer Donegan. He said that he did not see a copy of the search warrant or the inventory list until copies were forwarded to him by his attorney. The defendant stated that he requested a copy from Officer Donegan and that the officer replied that he would get him one. He said that at no point did Officer Donegan read the search warrant to him, show it to him, or tell him that a copy would be left at the residence. The defendant testified that he had been incarcerated since his arrest.

Officer John Donegan testified that he obtained a search warrant to search the defendant's residence. He said that upon entering the residence, he found the defendant, Curtis Peacock, and George Logan. Officer Donegan said that once the apartment was secured, the three suspects were gathered together and read their rights. He said that the search of the defendant's premises revealed about seven hundred grams of cocaine, unspecified quantities of marijuana, and a weapon.

3

Officer Donegan testified that he obtained two copies of the search warrant and that he gave the defendant one of the copies to read as the search was being executed. Officer Donegan stated that he also compiled an inventory list of the items seized during the search. He said that after the search he left an inventory list with the defendant's copy of the search warrant on the kitchen table at the residence. Officer Donegan testified that he told the defendant that a list of the items seized would be left with the defendant's copy of the search warrant at the residence for safekeeping purposes. He said that he left the copies at the residence because he knew that the defendant was going to jail and would have difficulty keeping up with the inventory list.

The trial court denied the defendant's motion to suppress. It found that Officer Donegan properly provided a copy of the warrant to the defendant and that he left a copy of the warrant and inventory list on the table at the residence.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The application of the law to the facts as determined by the trial court is a question of law that is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Rule 41(c) of the Tennessee Rules of Criminal Procedure provides in pertinent part as follows:

> The magistrate shall prepare an original and two exact copies of the search warrant, . . . one of which shall be left with person or persons on whom the search warrant is served . . . . [T]he failure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served, shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.

The intent of Rule 41(c) is to "secure the citizen against carelessness and abuse in the issuance and execution of search warrants." State v. Steele, 894 S.W.2d 318, 319

4

(Tenn. Crim. App. 1994). Rule 41(d) states that the "officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at a place from which the property was taken." The provisions of Rule 41 are mandatory. Steele, 894 S.W.2d at 319.

The suppression issue turns on whether Officer Donegan did in fact leave a copy of the search warrant with the defendant in accordance with 41(c) and (d). Upon review, we conclude that the evidence does not preponderate against the court's finding that Officer Donegan gave the defendant a copy of the warrant. Therefore, we hold that the trial court properly denied the motion to suppress.

## II. MOTION IN LIMINE

The defendant contends that the trial court erred when it denied the defendant's motion to prohibit the state from introducing into evidence at trial five car titles that were discovered on January 25, 1996, in a safe seized from the defendant's apartment during the search on December 9, 1994. The defendant argues that a prerequisite to introducing tangible evidence is that the "witness must be able to identify the evidence or establish an unbroken chain of custody." State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). Although the defendant admits that identifying the titles as belonging to him is self-evident, he insists that the state failed to establish the requisite chain of custody. Specifically, the defendant contends that the state failed to demonstrate that there had not been any tampering, substitution, or mistake during that period of time which elapsed between the initial search and the discovery of the titles at issue. In addition, the defendant submits that this evidence should have been excluded under Rules 403 and 602 of the Tennessee Rules of Evidence. He argues that under Rule 403 the probative value is outweighed by the

5

danger that the evidence will mislead the jury and that under Rule 602 the officer had no personal knowledge of how the titles arrived in the safe.

The state responds that the safe, and the car titles which it contained, were secured in police custody after the search and that they were not tampered with in any way. The state argues that the titles are highly relevant to the instant case and that Officer Donegan had sufficient personal knowledge to testify regarding the contents of the safe, in accordance with Rule 602. The state maintains that the trial court did not err in denying the defendant's motion in limine to prohibit the state from introducing the car titles into evidence. We agree.

The defendant filed a motion in limine to exclude the car titles found in the safe on the ground that the state could not satisfactorily establish the chain of custody of the titles or their location at the time of seizure. The trial court denied the motion, stating that the evidence was admissible and that the circumstances in which the evidence was found went to the weight of the evidence rather than its admissibility. Although the circumstances in the instant case were unusual in that evidence is usually discovered before it is seized and not the reverse, the officer's explanation for the delay in discovering the titles was found to be reasonable by the trial court.

Officer Donegan stated that during the search of the defendant's residence in December 1994, the officers found a safe, approximately eighteen inches square and weighing thirty to forty pounds, located under the kitchen sink. Officer Donegan testified that to open the safe, it was necessary for him to hit the safe once or twice with a sledge hammer. He said that the front door popped open, and he found about seven hundred grams of cocaine in plastic bags inside the safe. He said that he examined the inside of the safe and did not notice anything else at that time. He said that the blow from the sledgehammer pushed a shelf inside the safe against the roof of

the interior.  Officer Donegan testified that the safe remained locked at the warehouse until January 25, 1996, when Officer Donegan gathered information regarding the safe's serial number and manufacturer for the defendant's attorney.  He stated that as he lowered the safe to the ground, he dropped the safe on a chair.  He stated that he immediately noticed a strong odor of cocaine.  Officer Donegan said that he opened the door of the safe and a large plastic baggie containing cocaine and loose cocaine fell out.  The car titles, listing the defendant and Curtis Peacock as owners, were among the cocaine.  He said that it appeared that the cocaine and the titles had been lodged up against the roof of the safe and were knocked loose after he dropped the safe onto the chair.  Officer Donegan demonstrated for the court how the safe was opened and the location of the shelf, drugs and car titles.  At trial, the titles were admitted into evidence for the purpose of establishing the defendant's ownership of the safe.  The state did not introduce the additional cocaine into evidence.

In determining the admissibility of tangible evidence, it is sufficient if the evidence establishes a reasonable assurance of the identity of the evidence.  State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990).  Absent a clear mistake or abuse of discretion, the decision of the trial court concerning the sufficiency of evidence as to the chain of custody will not be disturbed.  Wade v. State, 529 S.W.2d 739, 742 (Tenn Crim. App. 1975); State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982).

In our view, the trial court properly determined that the state established a chain of custody for the car titles.  Officer Donegan testified that after he seized the safe on December 9, 1994, he properly tagged it before sending it to the Vice Warehouse for storage.  He stated that the safe remained locked up at the warehouse until he retrieved it on January 25, 1996.  The trial court heard Officer Donegan's testimony and thoroughly investigated the unusual circumstances surrounding the

7

discovery of the car titles. At the conclusion of the trial court's hearing, the court was satisfied that the officer's explanation was credible and that the discovery of the titles was reasonable under the circumstances of this case. We hold that the evidence supports the trial court's determination that the police did not tamper with, substitute, or make a mistake with the evidence while it was in police custody.

As for the defendant's contentions with respect to Rules 403 and 602, Tenn. R. Evid., we note that the defendant asserted in his motion in limine that the titles were excludable under these rules. However, at the hearing, the defendant did not argue that the evidence should be excluded on the basis of Rules 403 and 602. Nor did the trial court make a ruling regarding the admissibility of the evidence under these rules. As stated by this court in State v. Kinner, 701 S.W.2d 224, 227 (Tenn. Crim. App. 1985), "[t]he filing of a motion with the clerk without presenting it to the trial court for determination is of no effect." Moreover, "[a] trial judge will not be placed in error for failing to consider something which was never presented to him." Id.

In any event, we believe that Officer Donegan's testimony demonstrated sufficient knowledge of the matters regarding the initial search and seizure, as well as the facts surrounding the subsequent discovery of the hidden car titles, to comply with the "personal knowledge" requirement in Rule 602. Furthermore, Rule 403 was not violated. The probative value of the titles on the issue of ownership of the cocaine is not substantially outweighed by the danger that the jury would have been unfairly misled. The trial court did not abuse its discretion in admitting the evidence.

### III. RECALL OF A WITNESS

Finally, the defendant contends that the trial court erred in permitting the state to recall Curtis Peacock as a witness during its case-in-chief. He submits that Peacock's testimony was so inconsistent and contradictory that it should have been

excluded in its entirety. Relying on Taylor v. Nashville Banner Publishing Company, 573 S.W.2d 476, 482-83 (Tenn. App. 1978), the defendant argues that it is the rule of law in this state that contradictory statements of a witness relating to the same fact have the effect of "canceling each other out." The state responds that this rule only applies when the inconsistent testimony is unexplained and when neither version of the witness' testimony is corroborated by other evidence. Id. at 483. The state agrees that the testimony of Curtis Peacock was inconsistent, and the state admits that it was not corroborated by other testimony or facts. However, the state maintains that Peacock explained the inconsistent testimony by testifying that he was nervous and had difficulty hearing the questions, and thus, the rule from Taylor is inapplicable here. We agree.

Curtis Peacock's testimony was inconsistent the first time he testified. Initially, Peacock testified during direct examination by the state that he saw the safe possibly a week or two before the search. Then the witness stated that he first noticed the safe four to five days before the search and that he was not sure whether the safe was there before the arrival of Logan. He said that Logan began to live with the defendant two to three weeks before the search. Under cross-examination, the witness stated that he guessed that he did not see the safe until after Logan arrived. Upon redirect examination, Peacock testified that he saw the safe before Logan arrived. He then stated that he was not sure when he first noticed the safe. Peacock changed his testimony two more times. On redirect examination, he said he remembered telling the state's attorney that he saw the safe before Logan arrived but that he was no longer sure and was confused. On recross examination, he testified that Logan was there before he saw the safe, and on the subsequent redirect examination, he again said that he saw the safe before Logan arrived.

Peacock was recalled by the state the next day to clarify his testimony. He testified that he saw the safe before Logan arrived and said that he contradicted his

9

own testimony because he was nervous and confused the day before.  He did not change his testimony during the remainder of the examination.  On cross-examination, he stated that he saw the safe before Logan arrived and that he was telling the truth.

The decision to recall an excused witness is vested within the discretion of the trial court.  State v. McAlister, 751 S.W.2d 436, 438 (Tenn. Crim. App. 1987).  The trial court's decision to allow a party to recall a witness will only be disturbed upon a showing of abuse of discretion.  State v. Caughron, 855 S.W.2d 526, 539 (Tenn. 1993).

We agree that the testimony first given by Curtis Peacock was confusing and inconsistent.  However, the defendant's claim that Curtis Peacock's contradictory testimony was not explained on recall does not negate the fact that the trial court had the discretion to allow the testimony.  We see no abuse of discretion upon the record before us.

In consideration of the foregoing and the record as a whole, the judgments of conviction are affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David H. Welles, Judge

_____
Joe G. Riley, Judge

10