COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


ROBERT EARLE RAMBO
                                                         OPINION BY
v.      Record No. 1117-06-3                  JUDGE JAMES W. HALEY, JR.
                                                          APRIL 1, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Joseph A. Sanzone (Sanzone & Baker, P.C., on brief), for appellant.

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


I.  INTRODUCTION

Robert Earle Rambo appeals from his convictions by a jury before the Circuit Court of

the City of Lynchburg for second-degree murder in violation of Code § 18.2-32, use of a firearm

while committing a murder in violation of Code § 18.2-53.1, and use of a firearm in an occupied

building in violation of Code § 18.2-279.  Rambo argues the circuit court erred in (1) failing to

dismiss the indictment where the prosecution compelled the testimony of a witness under a grant

of immunity before a special grand jury and then declined to call that witness in a setting

affording him an opportunity for examination, and (2) refusing to permit him to introduce

rebuttal evidence of the victim's bad character at sentencing.  Finding these arguments

procedurally barred, we affirm.

## II. FACTS

We recite only those facts necessary to the disposition of this appeal.

In the early morning of July 2, 2005, Rambo fatally wounded Anthony Keith Nance by shooting him. The Commonwealth convened a special grand jury to investigate the killing. As part of that investigation, the Commonwealth sought the testimony of Melissa Burgess Rambo (Burgess).[1] Burgess asserted her Fifth Amendment rights and the Commonwealth granted her immunity, after which she testified. The Commonwealth later obtained a direct indictment against Rambo by a regular grand jury. Due to the direct indictment, no preliminary hearing occurred.

On the day of trial, defense counsel raised for the first time a motion to dismiss the indictment. Counsel stated his reasons as follows:

> MR. SANZONE: Judge, in order not to prejudice the Commonwealth by my motion -- that's the only reason that I'm raising this. Mr. Drewry advised me that one of my witnesses is going to take the Fifth based upon the letter we got relative to the special grand jury being called and her testimony before the special grand jury and subsequently in a letter we received by the Commonwealth Attorney. He told me that over the weekend while court was not in session. I've not had an opportunity to come back.
>
> We would move to dismiss the indictments based upon the effect that the grand jury has had upon the witnesses in this case and the fact that it has impaired my ability to call witnesses to testify in this matter.
>
> THE COURT: Mr. Doucette, I'm not --
>
> MR. SANZONE: He doesn't have it. I just got it.
>
> MR. DOUCETTE: Of course, Your Honor, motions to dismiss because of some sort of impropriety in the indictment process by rule are required to be filed at least seven days prior and heard prior to trial. You know, the fact that a witness for the

---

[1] Burgess and Rambo later married. At the time Burgess testified before the grand jury, they were not married.

- 2 -

defense is going to take the Fifth Amendment, I've got no control over that. And certainly, I would submit to the Court having not read this motion to dismiss at this point, I certainly can't cite the Court to any case law that deals with this particular issue, but, you know, I don't know of a provision that allows for a dismissal of an indictment because there's been a special grand jury and a witness happened to take the Fifth Amendment before the special grand jury.

       \*     \*     \*     \*     \*     \*     \*

MR. DOUCETTE: She took the Fifth before testifying before the grand jury. At that point she was granted transactional -- not transactional -- she was granted derivative immunity pursuant to the statute so that she did, in fact, testify.

THE COURT: And Mr. Drewry represents her?

MR. SANZONE: Judge, he does.

And if I might just explain a little bit, Judge, the position I set forth. She testified at the bond hearing and gave testimony and was examined by Mr. Doucette and myself. The special grand jury was impaneled. She was called before the special grand jury. When the deputy -- it actually was the investigator that was participating in this -- served her with the summons he told her, when you come to the grand jury you better not tell that crap that you told us down at the police station about being raped essentially or else we're going to charge you with perjury.

She appeared before the grand jury, did not wish to testify based upon what was being said. And, of course, as we know, perjury -- a charge of perjury can be brought in any matter concerning any discrepancy. It has to be material for it to be a convicted offense. But in any event, she came forward. She testified before the grand jury, she was not cross examined, there was no opportunity to object, and in essence, gave the Commonwealth a form of discovery that we do not have in a case like this.

When the grand jury proceeding was under way there was a question as to why the grand jury had been impaneled. And Mr. Doucette answered that, one, they wanted to find the gun. The witnesses that were called before the grand jury had all spoken with the police and given statements that were similar with what -- to what they had testified to before the grand jury.

- 3 -

　　　　*　　*　　*　　*　　*　　*　　*

　　　　THE COURT:  Any witness can take the Fifth.

　　　　MR. SANZONE:  Well, the problem is the pressure that was applied to witnesses who are testifying.  And the problem in this case has been from day one when she made the complaint that night she was ignored.  That next morning the course of the inquiry seemed to be to prove that she had not been raped.  Since that time there's been further inquiry into attempting to show that no rape took place when it's really not pertinent since the decedent is dead and there's absolutely no way to bring a charge of rape, abduction, whatever in that matter.

　　　　The last thing is, is that one of the reasons that was stated for calling the grand jury was to tie the witnesses down under oath.  There's really no reason for that to be done.  I think it's an improper reason for that to be done.  I think it's an improper reason because if there's an attempt to have the witnesses isolated in a daunting setting without opportunity to go -- counsel can be present, but can't ask any questions.  If counsel in this case for Mr. Rambo was present he couldn't ask -- I mean, couldn't even be present and couldn't ask any questions, nor could we object to leading questions or other matters.  And I just think that using the special grand jury not as an investigative tool, but as a method of discovery in a criminal case is improper, because when you do that and when you impair our ability to call a witness I don't think we should go forward.

After this dialogue, the circuit court denied the motion as untimely.  Defense counsel did not ask the court to consider good cause to excuse the untimely nature of the motion.

The case proceeded to trial before a jury.  After hearing the evidence, the jury found Rambo guilty of the above three mentioned charges and acquitted him of two others.

Before the parties presented evidence during the sentencing phase, defense counsel moved to introduce evidence relating to Nance's prior troubles with law enforcement.  This included two civil show cause summonses for failure to pay support, a capias for failure to appear, and an arrest warrant for assault and battery of a household member.  The court denied admission of the evidence.

During the Commonwealth's sentencing phase presentation, it introduced evidence showing Nance was a loving father with an upright character. Nance's sister testified his son "was devastated" by his father's death. She stated his son was disappointed he would not "get to do things with his father, play ball with his father or anything else that normally a child would get to do with their father." The jury was also shown a photograph of Nance with his son. Nance's sister further testified the death "really took a toll" on their father and had a "[t]errible" impact on her. She testified Nance lived with her in the period immediately before his death and that they enjoyed socializing with each other.

The jury recommended Rambo receive sentences of imprisonment of thirty years on the murder conviction, ten years on the conviction of use of a firearm in an occupied building, and three years on the conviction of use of a firearm while committing murder. The court imposed these sentences during a hearing on April 14, 2006, and by a written order. Rambo now appeals.

III. ANALYSIS

A. Whether the Circuit Court Erred in Declining to Dismiss the Indictment

Rambo first contends the circuit court erred in denying his motion to dismiss the indictment based upon prosecutorial misconduct involving the investigation of a special grand jury. He states the Commonwealth convened a special grand jury to investigate the murder and then compelled Melissa Burgess Rambo to testify before it by granting her immunity after she invoked her Fifth Amendment rights. Rambo then states the prosecution brought charges by a direct indictment from a regular grand jury. No preliminary hearing was held and since Rambo could not participate in the special grand jury proceedings, he did not have an opportunity to cross-examine Burgess. The prosecution did not call Burgess at trial and when Rambo did so, she invoked her Fifth Amendment rights. Rambo argues this process violated his constitutional

rights by enabling the prosecution to gain the benefit of Burgess' testimony while depriving him of an independent opportunity to examine her.

The Commonwealth contends Rambo's motion is barred by Rule 3A:9(b)(1). The Commonwealth argued this before the circuit court, and the court sustained its objection on this basis. We agree with the application of the rule.

Rule 3A:9(b)(1) states in relevant part:

> Defenses and objections based on defects in the institution of the prosecution or in the written charge upon which the accused is to be tried, other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion made within the time prescribed by paragraph (c) of this Rule. The motion shall include all such defenses and objections then available to the accused. Failure to present any such defense or objection as herein provided shall constitute a waiver thereof.

Paragraph (c) provides that except for speedy trial or double jeopardy claims, motions falling under Rule 3A:9(b)(1) must be filed seven days before trial. Rule 3A:9(d) states the court may dispense with the waiver provisions of the rule upon a showing of good cause. We have stated that "[t]he plain language of the Rule states that the requirements of Rule 3A:9(b)(1) are mandatory, and 'failure to raise such [defenses] properly is a waiver,' unless 'good cause' is shown." Harris v. Commonwealth, 39 Va. App. 670, 675, 576 S.E.2d 228, 230 (2003) (*en banc*) (quoting Freeman v. Commonwealth, 14 Va. App. 126, 127, 414 S.E.2d 871, 872 (1992)).

The key inquiry here concerns whether prosecutorial use of an investigative special grand jury involves "defects in the institution of the prosecution," as required by the Rule, when a regular grand jury ultimately indicts. Although we are aware of no Virginia precedent interpreting this phrase, federal and state courts considering similar rules provide guidance.

Federal Rule of Criminal Procedure 12(b)(3)(A) states that "a motion alleging a defect in instituting the prosecution" must be made prior to trial. Like the rules of this Court, the federal rules also provide the failure to raise such a motion constitutes waiver absent a showing of good

- 6 -

cause. Fed. R. Crim. P. 12(e). Motions under this rule "generally involve defects in the procedures leading up to the indictment, because this type of defect can be cured by the prosecutor prior to trial." United States v. Smith, 866 F.2d 1092, 1098 (9th Cir. 1989). Such defects include "prosecutorial misconduct, improper grand jury procedures, and noncompliance with the Federal Rules of Criminal Procedure." Id. at 1097. The United States Supreme Court has held strict application of the rule resulting in waiver appropriate, even as to constitutional claims. Davis v. United States, 411 U.S. 233, 238, 241 (1973).

State courts have similarly found a wide range of claims waived due to the failure to comply with timely filing requirements. This includes the failure to grant a preliminary hearing. State v. Kinner, 701 S.W.2d 224, 227 (Tenn. Crim. App. 1985). It also includes claims of discriminatory prosecution, State v. Heald, 382 A.2d 290, 300 (Me. 1978), that the prosecution failed to present exculpatory evidence to the grand jury, Buffington v. State, 745 P.2d 78, 78-79 (Alaska Ct. App. 1987), and that a police witness gave improper grand jury testimony, Edwards v. State, 158 P.3d 847, 854 (Alaska Ct. App. 2007). Further examples consist of claims of unconstitutional grand jury membership selection, Paciona v. Marshall, 359 N.Y.S.2d 360, 363 (N.Y. App. Div. 1974), and allegations of a prosecutor improperly expressing personal opinions before the grand jury, State v. Thrunk, 384 A.2d 906, 912 (N.J. Super. Ct. App. Div. 1978).

Based on this precedent, we conclude Rambo's arguments fall within the scope of our Rule 3A:9(b)(1). The claims concern allegations of prosecutorial misconduct "in the procedures leading up to the indictment." Smith, 866 F.2d at 1098. Rambo was therefore required to file his motion at least seven days before trial. Rule 3A:9(c). Yet Rambo did not raise his motion until the day of trial. This normally results in waiver of any objection. Rule 3A:9(b)(1). While Rule 3A:9(d) allowed the circuit court to dispense with this sanction upon a showing of good cause,

- 7 -

Rambo never asked the circuit court to consider this exception. We therefore find his arguments procedurally barred.

B. Whether the Circuit Court Erred in Excluding Evidence of the Victim's Bad Character

Rambo next contends the circuit court erred in refusing to allow him to admit evidence of the victim's bad character during the sentencing proceedings. Rambo argues that since the Commonwealth presented evidence of the victim's positive attributes during victim impact testimony, he should have been allowed to present rebuttal evidence.

Rule 5A:20(e) states that briefs shall contain "[t]he principles of law, the argument, and the authorities relating to each question presented." This rule "bars us from addressing any issues unsupported by authority." Klein v. Klein, 49 Va. App. 478, 482, 642 S.E.2d 313, 315 (2007). "'Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004) (quoting Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003)).

Rambo's brief cites to no authority on this issue other than to say that Code § 19.2-295.1 governs the admission of evidence in sentencing proceedings. Although Rambo argues in his brief that "[t]he law is well settled that upon a showing by a party of the good character of a party, the other side may introduce evidence of bad character," he provides no citation to this law. "By failing to cite any authority in support of this argument in his opening brief, [Rambo] has violated the provisions of Rule 5A:20(e)." Jeter v. Commonwealth, 44 Va. App. 733, 739, 607 S.E.2d 734, 737 (2005). Accordingly, we hold Rambo has waived this argument.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.