COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, Beales and Decker
Argued at Alexandria, Virginia


IAN RICHARD HUGHES

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
JANUARY 30, 2018

v.      Record No. 1818-16-4

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Ian Whittle (Spencer, Meyer, Koch & Cornick, on brief), for
appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


After a two-day trial, a jury convicted Ian Richard Hughes ("appellant") of armed

robbery, conspiracy to commit robbery, use of a firearm in the commission of a robbery, and

statutory burglary while armed with a deadly weapon. On appeal, appellant claims that the trial

court erred by failing to hear his motion *in limine* on the day of trial. Appellant argues that his

motion was timely made under Rule 3A:9(b)(2) and that the trial court erred by concluding that

the motion was filed too late and would not be heard. Appellant also claims that the evidence

was insufficient to support his convictions. For the reasons that follow, we affirm appellant's

convictions.

I. BACKGROUND

On appeal, we view the evidence "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

### A. Evidence Presented at Trial

So viewed, the evidence at trial was that early in the morning on December 7, 2015, two robbers with covered faces broke into the home of Dominic Ruibal (the "victim"), which is located in Marshall, Virginia. The victim was alone in the house as his wife had already left for work. The victim testified that the two robbers entered his bedroom while he was still in bed. One of the robbers used a pillow to cover one side of the victim's head, covering his ear and cheek. The robber then pressed a gun against the victim's other cheek. The other robber demanded, "Where's the fucking money and the drugs?"[1] The victim testified that he directed him towards the victim's dresser, where there was a half-ounce of marijuana and $80 in cash – both of which the robber took. While the robber who was talking searched the victim's dresser, the other robber climbed on top of the victim to hold him down.

Unsatisfied by the $80 he found in the victim's dresser, the robber then cursed the victim while yelling at him to tell the robbers where the rest of the drugs and money were. The victim testified that the robber who was doing the talking eventually found the victim's wallet and took approximately $300 from it. After finding only $300, the talking robber grew "more and more angry" and proceeded to ransack the victim's bedroom.

The victim testified that both robbers were male. Because the victim's face was partially covered, the victim distinguished the two robbers by how much they spoke. After ransacking the

---

[1] On cross-examination, the victim admitted that his testimony at the preliminary hearing was different than his testimony at trial regarding which robber initially held him down. At the preliminary hearing, the victim testified that the robber "that did all the talking" was the same robber who held him down and put the pillow over his face. One of the police officers who interviewed the victim also testified on cross-examination that the victim initially indicated that it was "the main speaker" who held the gun.

bedroom, the talking robber left the bedroom and searched other parts of the victim's home. While doing so, "the one doing the talking" continued "cursing" and "yelling" at the victim. He said, "Where is it? Where is it? You're lying to me. You're lying to me." Meanwhile, the quiet robber stayed with the victim, holding the gun on him.

At one point, the talking robber returned to the bedroom and the victim turned his head, catching a glimpse of the robber's face. Because the victim had turned his head, the quiet robber, who was still holding the victim down, struck him on the head with the gun. The talking robber then yelled at the victim not to look at him. It was at this point that the victim also caught a glimpse of the robber's gun, and he described it as a black handgun.

During the robbery, the two robbers exchanged roles and the talking robber held the gun on the victim while the quiet robber searched the victim's home. At another point, while the talking robber was away from the bedroom and searching the rest of the house, the quiet robber used a pillow case to choke the victim. The victim told the quiet robber that he was unable to breathe, to which the quiet robber responded, "You can fucking breathe. I can hear you talking." Therefore, the victim testified that he heard both robbers speak during the robbery.

Just before leaving, the talking robber said, "We got to go," to which the quiet robber murmured a response that the victim could not understand. The victim testified that the voice of the quiet robber sounded familiar but that he did not immediately recognize it. Two days after the robbery, the victim contacted the lead investigating officer in the case, Detective Jonathan Waddell, and reported that he now recalled the quiet robber's voice and recognized it as belonging to appellant. At trial, the victim identified appellant, and the victim also identified appellant's voice in a recording played by the Commonwealth, in which appellant had previously been established as one of the speakers. The victim testified that he "knew him [appellant] through several people, and he had been to my house before." To explain his delay in

identifying appellant as the quiet robber, the victim testified that he had not seen appellant in "maybe a year."

The victim testified that the robbers stole numerous items, including his marijuana and cash, a guitar, microphones and various pieces of musical equipment, two tablet computers, three cellular telephones, his wife's AK-47 rifle, his wife's pain medication, and her jewelry.[2]

Another Commonwealth's witness, Rachel Rogers ("Rogers"), testified that she was with her boyfriend, Matt Russo ("Russo"), on December 6, 2015 – the day before the robbery – when Russo and appellant agreed to break in to the victim's house. Rogers testified that Russo drove her car to appellant's apartment in Winchester, Virginia where appellant picked up "[a] bookbag, a gun, [and] some black clothing." Rogers described appellant's gun as a black handgun.

Rogers testified that, after the group arrived at the victim's home, she stayed with the car, which was parked away from the home. She testified that Russo and appellant got out of the car, covered their faces, and left to conduct the robbery.

After the robbery, Russo drove the car to the victim's house where Rogers observed appellant standing on the victim's porch with the stolen property. Rogers testified that, after loading the stolen items into her car, appellant told her about how "he stuck the gun in Dominic's back and how he pistol whipped him." The group then drove to a gas station where they dumped the victim's cellphones down a manhole so those items could not be traced back to them. Rogers testified that the group returned to appellant's apartment where they divided the stolen goods. Mrs. Ruibal's jewelry remained in Rogers's car, while appellant took the guitar, the AK-47, and

_____

[2] The police were only able to recover some of this stolen property, specifically, the victim's wife's jewelry, the victim's three cell phones, the victim's microphones and music equipment, and the victim's guitar. These items were subsequently identified by the victim and his wife as belonging to them.

appellant's handgun into his apartment. Finally, Rogers testified that the stolen tablet computers were later exchanged for heroin.

Police responded to the victim's home where they discovered a discarded black bandana that was later determined to contain traces of Russo's DNA. By working in coordination with the cell phone carrier and another law enforcement agency, the police recovered the victim's three stolen phones in Linden, Virginia, located between the victim's residence in Marshall and appellant's apartment in Winchester. These phones were returned to the victim, and he identified them as belonging to him.

The police executed a search warrant at appellant's residence where they recovered a bag that contained "stereo equipment, band equipment, microphones, along with numerous pieces of mail and [appellant's] driver's license," a guitar, and a black Smith and Wesson .380 with a black case. The police also executed a search warrant on Rogers's car, which the search showed contained jewelry that was subsequently identified as belonging to the victim's wife. Rogers was also in possession of jewelry at the time she was taken into custody at the Northwest Regional Jail, and the victim's wife also identified this jewelry as belonging to her.

### B. Appellant's Motion *in Limine*

On August 3, 2016 – the day before appellant's trial – appellant's trial counsel filed a motion *in limine* seeking to "exclude any testimony regarding the firearm found in the Defendant's apartment to include the showing of any photographs of that firearm for the purpose of witness identification as such testimony has no probative value and is highly prejudicial." Appellant's motion argued that no forensic evidence linked the gun to the robbery and that law enforcement witnesses would "not be able to testify that the gun found in the Defendant's residence was, in fact, the gun that was used in the robbery."

On the day of trial, August 4, 2016, appellant's trial counsel attempted to address the motion *in limine*, and the following colloquy ensued:

> THE COURT: Well, I'm not going to hear the motion.
>
> [DEFENSE COUNSEL]: Okay. Okay.
>
> THE COURT: So it was just filed too late. As you well know, motions to suppress have to be filed seven days in advance, heard three days beforehand. Now, I realize this is not a motion to suppress as such, it was styled a motion in limine --
>
> [DEFENSE COUNSEL]: I understand, sir.
>
> THE COURT: -- in this particular case. But basically, you wanted to keep out certain evidence, to suppress certain evidence. And even though none of them were alleged to be a violation of the U.S. Constitution or the Virginia state constitution, which would be for the motion to suppress, the Court's still not going to consider it at this time because I think it's also going to be incumbent upon the trier of fact in this particular case, which is the jury, to make a determination if the Commonwealth proves their case or not. And by that, I mean if they prove that it so happens is a weapon that was found, I believe at his home, whether they prove that it was the weapon used in this incident that allegedly happened on December the 7th of 2015 or not. So I think it's going to be for the trier of fact. If they don't, they, the Commonwealth, don't prove it, then the trier of fact will so find.
>
> [DEFENSE COUNSEL]: Understand, sir.
>
> THE COURT: All right. So the motion at this time will not be heard. We are then ready to proceed --
>
> [DEFENSE COUNSEL]: Yes, sir.

Subsequently, during the trial, photo evidence of the gun was admitted to the record after the trial judge asked counsel, "Any objection?" to which appellant's trial counsel replied, "No objection." The gun was also shown to the jury without objection, and Detective Waddell testified without objection that appellant's gun was consistent with descriptions given of it by

both the victim and Rogers.[3]  In short, while this evidence was within the scope of appellant's motion *in limine*, it was later admitted during the trial without objection from appellant's trial counsel.

## C.  Appellant's Motions to Strike

At the conclusion of the Commonwealth's evidence, appellant's trial counsel moved to strike the Commonwealth's evidence, stating, "Your Honor, at this time I would move to strike. I believe that the Commonwealth's evidence has fallen, fallen in the insufficiency category, and I don't believe that they have proven their case beyond a reasonable doubt, and for those reasons I would move to strike."  Appellant's trial counsel did not argue with any specificity how the Commonwealth's evidence was insufficient on any of the charges that appellant faced.  The trial court denied the motion to strike.

Following the defense's evidence, appellant's trial counsel renewed her motion to strike, stating, "In the meantime, Your Honor, I believe I'm obligated to renew my motion to strike, given lack of evidence on the Commonwealth's behalf.  I'll defer to the Court."  Appellant's trial counsel, however, did not provide any specific reasons as to why the evidence was insufficient. The trial court denied the second motion to strike and submitted the case to the jury.

## II.  ANALYSIS

### A.  Appellant's Motion *in Limine*

Appellant's first assignment of error claims that the "Trial Court erred by failing to hear the duly filed and noticed Motion in Limine thereby violating Rule 3A:9 of the Rules of the

---

[3] On cross-examination, Detective Waddell testified that he could not confirm that the gun recovered from the search of appellant's home was the actual weapon used during the robbery.

Supreme Court of Virginia by wrongfully determining that the Motion fell under [Rule 3A:9](b)(1) instead of [Rule 3A:9](b)(2)."[4]

A lower court's interpretation of the Rules of the Supreme Court presents a question of law that an appellate court reviews *de novo*. LaCava v. Commonwealth, 283 Va. 465, 470, 722 S.E.2d 838, 840 (2012); Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 153 (2008).

Subparagraph (b) of Rule 3A:9 establishes when a litigant *must* raise a defense and objection before trial, and, alternatively, when a litigant *may* raise a defense and objection before trial.

Rule 3A:9(b)(1) states:

> Defenses and objections *based on defects in the institution of the prosecution or in the written charge upon which the accused is to be tried*, other than that it fails to show jurisdiction in the court or to charge an offense, *must* be raised by motion made within the time prescribed by paragraph (c) of this Rule.

(Emphasis added). Paragraph (c) states that a motion governed by subparagraph (b)(1) "shall be filed or made before a plea is entered and, in a circuit court, *at least 7 days before the day fixed for trial . . . .*" Rule 3A:9(c) (emphasis added). This Court has previously stated, "[T]he plain language of the Rule states that the requirements of Rule 3A:9(b)(1) are mandatory, and 'failure to raise such [defenses] properly is a waiver,' unless 'good cause' is shown." Rambo v. Commonwealth, 51 Va. App. 418, 424-25, 658 S.E.2d 688, 691 (2008) (second alteration in original) (quoting Harris v. Commonwealth, 39 Va. App. 670, 675, 576 S.E.2d 228, 230 (2003)

---

[4] While appellant's trial counsel did not explicitly argue before the trial court, as clearly as appellant's counsel now states on appeal, that the motion *in limine* was timely under Rule 3A:9(b)(2), this argument is implicit in the motion as it was filed and was adequate in this case to preserve appellant's assignment of error for appeal.

(*en banc*)).  See, e.g., Epps v. Commonwealth, 293 Va. 403, 410, 799 S.E.2d 516, 519 (2017);

Waters v. Commonwealth, 29 Va. App. 133, 137, 510 S.E.2d 262, 264 (1999).

In contrast, subparagraph (b)(2) of Rule 3A:9 states, "In addition to the defenses and objections specified in subparagraph (b)(1) of this Rule, *any defense or objection* that is capable of determination without the trial of the general issue *may be raised by motion* before trial." Rule 3A:9(b)(2) (emphasis added).  Thus, under subparagraph (b)(2), the use of the word "*may*" does not require that such motions be heard before trial.  Rather, Rule 3A:9(b)(2) is permissive, and motions properly considered under this subparagraph are timely so long as they are made before a jury renders its verdict or the trial court (when sitting as a factfinder) finds the defendant guilty.  See id.

In the current case, it appears that the trial court essentially viewed appellant's motion as a motion to suppress.[5]  Appellant now argues on appeal that the "Trial Court erred by *failing to hear* the duly filed and noticed Motion in Limine . . . ."  (Emphasis added).  However, even assuming without deciding that the motion was timely under Rule 3A:9(b)(2), the trial court ultimately admitted the evidence that appellant had sought to exclude with his motion *in limine* during the trial without any objection from appellant.  During the Commonwealth's direct examination of Detective Waddell, the Commonwealth requested that photo evidence of the gun that was recovered from appellant's apartment be admitted.  The trial court specifically asked appellant's counsel whether she had any objection, and counsel replied, "No objection." Detective Waddell also then testified that appellant's handgun was "consistent with the

---

[5] Similar in purpose to Rule 3A:9(b)(1), Code § 19.2-266.2 requires that motions to suppress based upon "provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Section 8, 10 or 11 of the Constitution of Virginia" shall be filed "not later than seven days before trial in circuit court . . . ."  Code § 19.2-266.2.  "A hearing on all such motions or objections shall be held not later than three days prior to trial in circuit court, unless such period is waived by the accused, as set by the trial judge."  Id.

description provided" by both the victim and Rogers. This testimony was again admitted without objection. Therefore, any possible error that may be attributed to the trial court's not initially hearing and ruling on the motion at the beginning of the trial would be harmless because the trial court later admitted the evidence that was the subject of appellant's earlier motion without objection.[6] See also Rule 5A:18. In addition, the posture of this unobjected-to evidence is such that, as the trial judge had earlier noted, it was a proper question for the jury, as trier of fact, to consider and resolve.

## B. Sufficiency of the Evidence

Appellant argues in his second assignment of error that the "Trial Court erred by failing to sustain Hughes's second Motion to Strike as no reasonable finder of fact could have found the Commonwealth's evidence sufficient to find Hughes Guilty."

---

[6] In this case, we apply "the standard for non-constitutional harmless error, which is that such error is harmless if we can be sure that it did not 'influence the jury' or had only a 'slight effect.'" Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)); Kotteakos v. United States, 328 U.S. 750, 764-65 (1946). The standard for non-constitutional harmless error is codified by Code § 8.01-678, which states:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

See also Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (stating that Code § 8.01-678 makes "harmless-error review required in *all* cases."). In addition, Virginia courts

> have applied Code § 8.01-678 in criminal as well as civil cases. In a criminal case, it is implicit that, in order to determine whether there has been "a fair trial on the merits" and whether "substantial justice has been reached," a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless.

Clay, 262 Va. at 259, 546 S.E.2d at 731 (quoting Code § 8.01-678) (citation omitted).

Our ability to consider the error claimed by appellant – specifically that the evidence was insufficient to support his convictions – is determined by whether the issue was adequately preserved in the trial court. Rule 5A:18 states:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. *A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review*.

(Emphasis added). We have previously noted that, in strictly enforcing this Rule, "the Supreme Court has held that a challenge to the sufficiency of the Commonwealth's evidence is waived *if not raised with some specificity in the trial court*." Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987) (emphasis added) (citing Floyd v. Commonwealth, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978)). See, e.g., Chatman v. Commonwealth, 61 Va. App. 618, 631, 739 S.E.2d 245, 251 (2013) (*en banc*).

In Floyd, the Supreme Court stated:

> A general sufficiency objection does not, by itself, raise the issue whether a defendant was properly convicted of one or multiple crimes. To hold otherwise would be to deny the trial court the opportunity to consider and weigh, and, if necessary, reconsider before finally ruling on legal questions in the orderly course of trial.

Floyd, 219 Va. at 584, 249 S.E.2d at 176; see also Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 79, 688 S.E.2d 199, 207-08 (2010) (stating that the primary purpose of the contemporaneous objection rule is to allow the trial court "to rule intelligently on the issues presented, thereby avoiding unnecessary appeals and reversals. A specific, contemporaneous objection also provides the opposing party an opportunity to address an issue at a time when the course of the proceedings may be altered in response to the problem presented." (quoting Shelton v. Commonwealth, 274 Va. 121, 126, 645 S.E.2d 914, 916 (2007))).

The level of specificity that is required to satisfy Rule 5A:18 is not a high standard. For example, in Johnson v. Commonwealth, 58 Va. App. 303, 709 S.E.2d 175 (2011), a case in which the appellant argued that the evidence was insufficient to convict him of malicious wounding,[7] appellant successfully preserved his sufficiency argument *by challenging a single element of the offense* during closing argument. There, defense counsel argued that the evidence failed to show that appellant's actions actually *caused* the victim's injuries. In deciding to reach the merits of the assignment of error, this Court stated:

> We note that at trial, appellant did not state his objection to the sufficiency of the evidence regarding causation with the precision or particularity that is generally desirable. However, for purposes of this matter we find that appellant stated his concern with the minimum amount of specificity necessary to fulfill the requirements of Rule 5A:18 . . . . Because appellant referenced the issue of causation, we find that he met the minimum requirements of Rule 5A:18.

Johnson, 58 Va. App. at 314 n.2, 709 S.E.2d at 181 n.2.

By contrast, in the current case, appellant was charged with four crimes – armed robbery, conspiracy to commit robbery, using a firearm in the commission of a robbery, and statutory burglary while armed with a deadly weapon. Following the conclusion of the Commonwealth's evidence, rather than addressing any element of these four charges, appellant's trial counsel made a general motion to strike that lacked any specificity, stating, "Your Honor, at this time I would move to strike. I believe that the Commonwealth's evidence has fallen . . . in the insufficiency category, and I don't believe that they have proven their case beyond a reasonable doubt . . . ." In later making her second motion to strike, appellant's trial counsel again provided no specific reasoning as to why the evidence was insufficient when she only stated, "Your

---

[7] In Johnson, appellant was also convicted of maiming by mob in violation of Code § 18.2-41.

Honor, I believe I'm obligated to renew my motion to strike, given lack of evidence on the Commonwealth's behalf."

Simply put, appellant's trial counsel failed to argue both motions to strike with even the minimal degree of specificity that Rule 5A:18 requires. The second motion to strike (the denial of which appellant challenges in this assignment of error) was made in very general terms, which Rule 5A:18 states is insufficient. Therefore, we hold that appellant's second assignment of error was not adequately preserved in the trial court and that we, consequently, cannot reach its merits on appeal.

### III. CONCLUSION

In short, even assuming without deciding that appellant's motion *in limine* was timely under Rule 3A:9(b)(2), any error possibly committed by the trial court in initially *not hearing* appellant's motion was harmless. The trial court ultimately admitted the evidence that was the subject of appellant's motion *in limine* without objection from appellant's trial counsel. Appellant failed to preserve his second assignment of error for appeal because appellant's trial counsel did not make her motions to strike with any specificity as to why the evidence was insufficient for the convictions. For all of these reasons, we affirm appellant's convictions.

<u>Affirmed.</u>